THE MISSOURI PACIFIC RAILWAY COMPANY v. NOAH L. BOWMAN.

**No. 13,483.**  ( 75 Pac. 482.)

SYLLABUS BY THE COURT.

1. JURY AND JURORS—*Misconduct of Prevailing Party — Verdict Set Aside.* It is of the highest importance to the administration of justice and the good of society that the unquestioned purity and unbiased character of the jury be preserved, and where it appears that the prevailing party has for any ulterior or sinister motive attempted to tamper with or influence the jury, a verdict in his favor should be set aside, without a showing that such attempt has in any way influenced the jury.

2. ———— *Improper Influence by Innocent Act Fatal to Ver-*

*dict.*  A like result should follow where it appears that an innocent act of the prevailing party outside the issues of the case has had the effect improperly to influence the jury in his behalf.

3. PRACTICE, DISTRICT COURT— *Conveyance of Jurors to View Premises.*  It became necessary in the trial of this case that the jury should be sent to view the premises in dispute.  The judge announced in open court that this would be done, and that the plaintiff had carriages ready to convey the jury.  The carriages were hired from a livery-stable owned by one of the jury, of whom the plaintiff was a regular customer.  These facts are not sufficient to require a verdict in favor of plaintiff to be set aside.

Error from Anderson district court; C. A. SMART, judge.   Opinion filed February 6, 1904.   Affirmed.

*Waggener, Doster & Orr*, and *J. G. Johnson*, for plaintiff in error.

*Manford Schoonover*, and *C. W. Whittington*, for defendant in error.

The opinion of the court was delivered by

CUNNINGHAM, J. : The defendant in error was plaintiff below.   His action was for the recovery of damages to a pasture field by a fire set out by defendant's locomotive.   He had judgment, which plaintiff in error seeks now to reverse.   The first claim of error is that plaintiff was guilty of misconduct in connection with the jury.   During the introduction of defendant's evidence the court said :

"I think we will take a recess here, and I will send the jury out to view the premises again.   I sent the jury yesterday to view only a part of the farm ; I think I was in error in that.   Mr. Bowman has carriages here, and I will let the jury go and see the entire farm."

The carriages were procured at a livery-stable owned by one of the jurors, and the misconduct suggested is in two particulars :  (1) The first time the

jury went to look at the premises, upon the sugges-
tion of the defendant, they walked, and the second
time the plaintiff furnished carriages for their use;
this, it is claimed, would tend to influence them in
favor of the plaintiff.   (2) It is contended that the
juror owning the livery-stable from which the convey-
ances were procured would certainly be influenced by
reason of their having been hired from him.

The purity of the jury trial cannot be too safely
guarded. It is the theory, and should be the practice
as nearly as it is possible, considering human infirmi-
ties, that a juror to whom the issues arising between
litigants are submitted should be unprejudiced and
without the least inducement, save that disclosed in
the evidence, to influence his verdict. This is required
not only as a safeguard to the individual litigant's
rights, but as a matter of public policy. The latter
consideration is perhaps much greater than the for-
mer, for, when confidence in the incorruptibility and
impartiality of juries is destroyed, our social and ju-
dicial fabric is vastly weakened. Courts should not
tolerate the slightest suspicion of improper conduct
on the part of a litigant tending to corrupt or im-
properly to influence a jury. This principle is well
established and should never be overlooked. Its ap-
plication, however, must be determined by the cir-
cumstances of each case.

In this case it seems that a more extended view was
to be taken by the jury on its second trip than on the
first, so that it was much more convenient, if not nec-
essary, to have conveyances for them. It appears
from the affidavit of the plaintiff that he had fre-
quently used livery teams during a number of years
prior to this time; that he had procured them at the
livery-stable owned by the juror; that monthly bills

for the use of such teams were presented and had been paid by him in the regular course of business; that on this occasion, in procuring the teams used, he had communicated with the person in charge of the stable and not with the juror himself, and there is no showing that the juror had any knowledge of the matter except such as we might reasonably suppose would be conveyed to him by seeing the teams in use. Nothing was concealed. The arrangement was announced by the court and received its indorsement; the procuring of the teams at the stable belonging to one of the jurors was in accordance with a regular business custom, and not extraordinary. About the entire transaction we see no indication that the plaintiff was endeavoring to use any undue influence upon the jury, or that the jury was likely to be influenced by it. Suppose the jury had been carried to the premises in one of defendant's trains—a practice not infrequent—it would be a hard rule that would require us, for this reason, to set aside a verdict in its favor.

In *Vane et al. v. City of Evanston*, 150 Ill. 616, 37 N. E. 904, the prevailing party furnished a lunch at a hotel, and it was shown that this luncheon was without cost or charge to the jurors, and, as one of them who made an affidavit understood it, was to be paid for by the prevailing party. On the countershowing it was made to appear that the jury could not return to their usual quarters in time to get their usual dinner and that the arrangement was made at the suggestion of the court. The court concluded that it did not affirmatively appear that the successful party was guilty of any intentional wrong, and in laying down the rule said:

"It does not, however, follow, that customary offices of civility, and ordinary hospitality or courtesy,

extended by the successful litigant, when not designed or calculated to influence the juror or jurors in their consideration of the case, and which are devoid of suspicion, will afford sufficient ground for setting the verdict aside.''

In *Gale agt. New York Central & Hudson R. R. Co.*, 53 How. Pr. 385, the facts of the alleged misconduct were that during a recess of the court one of the jurors, desiring to return home, asked permission of the plaintiff to ride with him. To this the plaintiff consented and they rode together for some distance along with one of the plaintiff's witnesses. It was shown that the case on trial was not spoken of or discussed. Relative to the matter the court said :

''If the plaintiff, with a view of influencing the juror by placing him under obligations to him, had sought this opportunity so to do, a new trial would be granted. In such a case the court should see that an attempt had been made to improperly influence, and it would not stop to inquire whether the wicked effort had or had not been successful, but would assume that the party had, at least partly succeeded in that which he attempted. . . .

''When, however, the court is satisfied that there has been no attempt by the successful party to unduly influence a juror, either by conversation, or by placing him under obligations, and that his action has not in fact been improperly influenced, then, even though the act may have been indiscreet, the court will not disturb the verdict.''

In *Hilton v. Southwick*, 17 Me. 303, 35 Am. Dec. 253, the prevailing party, in going to his home, conveyed in his own wagon one of the jury who lived in the same direction. No conversation relating to the cause took place between them, and the act seemed to be one of neighborly kindness not out of the ordinary course, and done without any purpose to influence the

juror. The court strongly announced the principle that the purity of the jury must be guarded with the greatest jealousy, and said: "If there appeared the least attempt on the part of the plaintiff to seek and influence the juror the verdict would be set aside." But, concluding that no sinister motive was apparent, it refused to set aside the verdict. In the case at bar much less suspicion attaches, as there is nothing here of a covert nature.

In *Gale v. Railroad Company*, supra, the court, in commenting upon the Hilton case, remarked:

"The principle upon which the verdict in *Hilton agt. Southwick* was sustained — that the act done was not an officious one thrust by the prevailing party upon the juror for the purpose of procuring his good will, and thus influencing action, but it was the result of neighborly courtesy and kindness, without any evil intent whatever, is not only sound in reason, but it and similar reasons have frequently guided and controlled the judgments of courts."

See, also, the cases announcing the same principle cited in the above-quoted cases; and also *Ford v. Holmes*, 61 Ga. 419; *Central Railroad Company v. Wiggins*, 91 id. 208, 18 S. E. 187.

We have been cited to many discussions where intoxicating liquors have been given or tendered as a treat to jurors. The tendency of the courts seems to be, and perhaps properly so, to view this practice with much more suspicion than the ordinary civilities due from one person to another, and these cases can hardly be accepted as determinative or aptly illustrative of the question in hand. We think that the practice in respect to the matter under discussion ought to be very carefully guarded by trial courts, but are inclined to the view that in this case neither a wrong purpose on the part of the plaintiff nor culpable bias on the part of

the jury resulting from his actions was sufficiently shown to require us to overturn the conclusion of the trial court.

It is further claimed that conversation was had or remarks were made by the plaintiff in the presence of the jury while they were viewing the premises.' This, however, was denied by the plaintiff and the sheriff, and the conclusion of the trial court upon this disputed question is conclusive.

Some four other assignments of error were presented. We have given them all very careful consideration and find no material error in them, and conclude that no general good will be accomplished by their specific discussion.

The judgment of the lower court will be affirmed.

All the Justices concurring.