that a demand should be made, in order to justify a reasonable ground of belief of the plaintiff's guilt, if the facts existing justified it, as they clearly did.   While the delay between the misappropriation and the issue of the warrant was eight months, yet the defendant's investigation into the plaintiff's acts did not close until some time in February, March, or April, and plaintiff was arrested on the 11th day of April.   No inference justifying a lack of probable cause can therefore arise from this fact.

Claim is also made that want of probable cause can be inferred from the fact that the defendant started in a rival business; that, seven days before the arrest, defendant began a civil suit against the plaintiff, charging him with unfair competition.   These facts did not bear upon the question of probable cause, but bore upon the question of malice in instituting the prosecution.   It is well settled that lack of probable cause may not be inferred from proof of malice.   Besson v. Southard, 10 N. Y. 236.

Upon the whole case, we are of opinion that the plaintiff failed in bearing the burden of showing that there existed a lack of probable cause.   On the contrary, we think that, upon the practically undisputed facts, the existence of probable cause in instituting the prosecution was established to exist.

It therefore follows that the judgment and order should be reversed, and a new trial granted, with costs to the appellant to abide the event.   All concur, except O'BRIEN, J., who dissents.

---

(99 App. Div. 592)

### WERNER v. INTERURBAN ST. RY. CO.

(Supreme Court, Appellate Division, Second Department.   December 15, 1904.)

1. TRIAL—MISCONDUCT OF JUROR—SETTING ASIDE VERDICT—APPLICATION.
    A motion to set aside a verdict on the ground of misconduct on the part of jurors should be made by application to the special term.

2. SAME—MISCONDUCT OF JUROR—OBJECTION—TIME.
    Where counsel permitted the trial to continue without calling the attention of the court to misconduct of a juror in talking with an interested party, he could not impeach the verdict on that ground.

3. SAME—CONVERSATION WITH EMPLOYÉ OF DEFENDANT.
    The mere fact that a juror conversed at the noon recess with an adjuster for defendant railroad company was no ground for setting aside a verdict in favor of defendant and granting a new trial in the absence of any showing as to the subject of the conversation.

Appeal from Trial Term, Kings County.

Action by Frederick C. Werner against the Interurban Street Railway Company.   From an order setting aside a verdict in favor of defendant and granting a new trial on the ground of misconduct of a juror, defendant appeals.   Reversed.

Argued before HIRSCHBERG, P. J., and BARTLETT, WOODWARD, JENKS, and HOOKER, JJ.

Luke D. Stapleton (Harlan Moore, on the brief), for appellant.

Henry Escher, Jr. (George F. Elliott, on the brief), for respondent.

JENKS, J. This is an appeal from an order made at the Trial Term, upon application by the plaintiff, setting aside a verdict for the defendant and granting a new trial on the ground of the misconduct of a juror. In Fleischmann v. Samuel, 18 App. Div. 97, 45 N. Y. Supp. 404, appeal dismissed 154 N. Y. 731, 49 N. E. 1097, we held that the correct practice is application to the Special Term. But, as no question was raised, we shall proceed to consider the appeal.

The verdict was for the defendant. The alleged misconduct is that during the trial juror No. 8 talked with Mr. Bennings, an adjuster of the defendant. An attorney and the counsel for the plaintiff saw the incident, of which no particulars were thereafter developed. Though thus fully apprised, he permitted the trial to continue to its conclusion, and only after the verdict called the incident to the attention of the court. His acquiescence precluded his impeachment of this trial. Bruswitz v. Netherlands Steam Nav. Co., 64 Hun, 262, 19 N. Y. Supp. 75; Gale v. N. Y. Central & H. R. R. R. Co., 13 Hun, 1, affirmed 76 N. Y. 594; Fox v. Metropolitan Street R. Co., 93 App. Div. 229, 87 N. Y. Supp. 754. Examination of the merits convinces us that the order should not stand. The testimony taken by the learned trial justice shows that the juror, a man of large business affairs and of substance, was a stranger to the defendant. The specification is that this juror, within a few minutes of the close of the mid-day recess hour, held this conversation near the door of the courtroom, in the courthouse hall. The plaintiff's counsel, his subordinate, a lawyer, and a juror of the panel testify that they saw the conversation, but none heard it. On the other hand, juror No. 8 and Mr. Bennings deny that there was any talk between them. Judge Quigley, an attorney of this court, testifies that he was standing in conversation with Mr. Bennings about another case pending against the defendant, that juror No. 8 came along, and, being an old friend, greetings passed between him and Judge Quigley. Judge Quigley asked him what his business was there, and the juror answered that he was a juror on a railroad case, whereupon Judge Quigley said, "Don't talk about it here, as this is the Metropolitan Street Railroad you are talking to." The juror said, "How long since have you been connected with the railroad?" Judge Quigley replied, "I am not connected, but this gentleman is." Judge Quigley did not introduce the juror and Mr. Bennings, but walked away, and his impression is that the juror did likewise, though he is not certain. Weighed in the scale of sight against that of hearing and participation, we think that the evidence establishes that the version of the juror, of Mr. Bennings, and of Judge Quigley is correct. "No man becomes suddenly base," and it is hard to believe that a juror of this character would, at the very door of the courthouse, in the sight of all men, hold a conversation to invite embracery. No juror is so hedged in as to be held vile if he stop on his way to the box to accost a friend or to greet an acquaintance. We do not think to impute falsification to counsel of such high standing as he who represented the plaintiff, or to the other witnesses, but, sifting their testimony, and bearing

in mind that it is but based on sight, we think that they mistook the character of this fleeting incident.

We might rest here. But the learned trial justice has written an opinion which states that he cannot "escape the conclusion" that the juror, after he had been notified by Judge Quigley that Mr. Bennings represented the defendant, conversed with Mr. Bennings. We cannot find a line of testimony which so necessarily confines the learned justice. True, there is testimony that these men stood apart, but no mention is made of this situation relative to that of Judge Quigley. But assume, counter to our view of the testimony, that it is established that the juror did talk with Mr. Bennings after he knew of his relation to the defendant, all persons familiar with .the doings of our courts know that attorneys, counsel, jurors, and witnesses, who are strangers but for the contact in a trial, are accustomed to greet one another and exchange commonplaces, or, as the vernacular has it, "pass the time of day." Such conduct is ascribed to common courtesy, not to conspiracy. It is rarely made the subject even of comment. In Borland v. Barrett, 76 Va. 128, 44 Am. Rep. 152, the court say: "It frequently happens, however, in civil cases, that during the recess of the court parties and jurors are casually thrown together at hotels, on the highway, and other public places, and converse upon indifferent topics, without a thought of impropriety in so doing. These conversations have never been considered as sufficient of themselves to set aside a verdict. It is so laid down by Lord Hale, and by the authorities with but few exceptions. Hale, P. L. Cas. 308." See Baylies on New Trials and Appeals, p. 590; State v. Way, 38 S. C. 333, 17 S. E. 39; Bryan v. Commonwealth (Ky.) 33 S. W. 95; People v. Dunne, 80 Cal. 34, 21 Pac. 1130; Delaney v. Hartwig, 91 Wis. 412, 64 N. W. 1035; Turner v. St. John, 3 Cold. 376. The learned counsel for the respondent, a gentleman of high standing and of appreciation of the ethics of a trial, speaking in his printed points of the plaintiff's attorney, a gentleman of like standing, says that he "was loath to impute deliberate wrongdoing to either of these persons, and said nothing. These two men may have been talking about the most innocent subject, instead of being guilty of a grave wrong. When, however, the verdict came in, an entirely different state of facts presented itself." What was the "different state of facts?" Let the counsel answer by his next sentence: "Counsel for the plaintiff was astonished to see that the verdict was against him. Then for the first time he knew that the interview complained of had had an unlawful purpose." How did he know? By the verdict? Did the mere vote of this juror in unanimity with the other 11 indicate that it was the result of improper influence upon him?

The order should be reversed, with $10 costs and disbursements, and the verdict should be reinstated. All concur.