(93 Misc. Rep. 245)

STONE v. O'NEIL.

(Supreme Court, Trial and Special Term, Broome County. January 3, 1916.)

1. JURY ⬅92—DISQUALIFICATION OF JURORS.

That a juror had been a client of the attorney for one of the parties does not absolutely disqualify him.

[Ed. Note.—For other cases, see Jury, Cent. Dig. §§ 420–422; Dec. Dig. ⬅92.]

2. NEW TRIAL ⬅42—JURORS—DISQUALIFICATION.

Where a juror on voir dire examination admitted that he had been a client of the attorney of one of the parties, and it was not conclusively shown that he concealed the recentness of the transaction, a verdict will not be set aside on the ground of fraud, in that the juror concealed his true relations with such attorney.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 74–79; Dec. Dig. ⬅42.]

3. JURY ⬅92—JURY TRIAL—DUTY OF ATTORNEY.

Where, on voir dire examination, a juror admitted that he had been a client of the attorney for the plaintiff, and defendant's counsel did not question concerning the relationship, plaintiff's attorney is not bound to explain the closeness of the relationship.

[Ed. Note.—For other cases, see Jury, Cent. Dig. §§ 420–422; Dec. Dig. ⬅92.]

4. NEW TRIAL ⬅56—DISQUALIFICATION OF JUROR—VERDICT.

A verdict will not be disturbed, where no injustice resulted, because of the participation of a juror who might have been peremptorily challenged or was subject to objection.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 116–119; Dec. Dig. ⬅56.]

Action by Eva E. Stone against George F. O'Neil. On motion to withdraw a juror, and for mistrial on the ground of misconduct of juror. Motion denied, and judgment rendered on verdict for plaintiff.

Joseph S. O'Neil and James T. Rogers, both of Binghamton, for the motion.

T. B. Merchant, of Binghamton, opposed.

DAVIS, J. When this trial commenced the names of 18 jurors from the regular panel were in the box, and counsel were seasonably informed of the number remaining, as the examination progressed. Upon the examination 2 were peremptorily challenged by the plaintiff and 5 by the defendant. Counsel then were asked whether they wished to proceed to trial with 11 jurors, or have the box filled by talesmen.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The defendant's counsel, in particular, were insistent that the jury box should contain the legal number, and the court directed the sheriff to summon talesmen, which he did from the bystanders, and one was sent to the jury box. The trial proceeded to the conclusion of the evidence. The jury, after argument by counsel and the court's charge, was sent out; and as court was about to adjourn from Friday afternoon until Monday morning, the jury was instructed to bring in a sealed verdict.

On Monday morning, when court opened, the jury had assembled in their seats ready to deliver their verdict. At this time the defendant's counsel, with great vehemence in open court, and first upon his unsupported statement, asked leave to withdraw a juror and have the court declare a mistrial on the ground of the misconduct of the attorney for the plaintiff and the juror who had been drawn as a talesman; the alleged misconduct being stated as "perpetrating a fraud and concealment, and suppression of material facts, upon this court and upon this defendant, on the trial of this action." The court having required an affidavit to be filed, the defendant's counsel presented one soon after, reiterating and enlarging upon the charges so made in open court. Defendant's counsel demanded the right to examine witnesses and the juror himself then and there, which was permitted, the utmost freedom being allowed.

[1, 2] Eventually the alleged fraud and misconduct resolved itself into the question as to whether or not the juror either denied or improperly concealed the fact that recently he had been a client of the plaintiff's attorney. If the juror had stated falsely or had deliberately concealed that fact, with intent to deceive counsel, it would undoubtedly be ground for a new trial. McGarry v. City of Buffalo, 24 N. Y. Supp. 16;[1] Fealy v. Bull, 11 App. Div. 468, 42 N. Y. Supp. 569; Baccelli v. Booth, 75 Misc. Rep. 260, 133 N. Y. Supp. 343; Jefson v. Crosstown Street Railway Co., 72 Misc. Rep. 103, 129 N. Y. Supp. 233. But the fact that he was the client of one of the parties did not absolutely disqualify him. Code Civ. Proc. § 1180; People v. McQuade, 110 N. Y. 284, 18 N. E. 156, 1 L. R. A. 273.

It is a serious matter to challenge the validity of a verdict upon a ground which attacks the integrity of a man participating in it, and the person making such charge should be prepared to see that the charge is well sustained by evidence of a positive and convincing character. The attitude of the courts is shown by the well-established rule that, once a verdict has been agreed upon, the statements or affidavits of jurors will not be received to impeach it. Zint v. Mulligan, 140 App. Div. 230, 124 N. Y. Supp. 1016; Dalrymple v. Williams, 63 N. Y. 361, 20 Am. Rep. 544. Therefore counsel who makes such an attack should do so in a spirit of fairness and with moderation, lest his zeal to overturn an adverse verdict should prompt him to overstate his case.

There is no evidence before me in support of the motion, except the testimony of the three counsel for the defendant, based upon their

---

[1] Reported in full in the New York Supplement; reported as a memorandum decision without opinion in 70 Hun, 597.

recollection of what had occurred on the examination several days before; no notes or memoranda having been kept. They do not agree on the questions and answers with anything like exactness, but on close examination of their testimony it may be fairly drawn that all agree that the juror answered that he had been a client of the plaintiff's attorney, but had not been recently. So that the claim of misconduct reduces itself to the question of whether or not the juror on the examination spoke falsely or deceived the defendant's counsel in telling them that he had not *recently* been a client of the plaintiff's attorney.

The juror himself, called and examined by the defendant's counsel, says he stated that the plaintiff's counsel had been his attorney in several actions, but not in any case that ever came to trial, and that he did not state, nor was he asked, as to how recent these relations were. It appeared that these actions had been mortgage foreclosure suits which had been undefended, an appeal on a question of law from a small City Court judgment, taken by default, and the bringing of an action recently, which was in process of settlement or supposed to be settled, and in which no answer had been interposed. All were rather recent, but none had ever been in court for trial.

The two counsel for the plaintiff and a clerk testified that no question was asked regarding the recent relations between the juror and the plaintiff's attorney. This makes the evidence evenly balanced in the number of witnesses called, eliminating the juror's testimony.

Perhaps it would be well to consider the circumstances in reaching a determination of the question of fact thus raised. The juror was drawn and took his seat after the examination of the other jurors had been completed. Upon his examination he disclosed that he had been well acquainted with the defendant for 30 years, and knew the defendant's counsel, and he was selected after consultation between the counsel and the defendant. The jury had not rendered its verdict before the attack was made. It was conceded on the argument that, after the jury had separated on Friday afternoon, a newspaper had published a "rumor" the following morning that the verdict was for the plaintiff. It may well be inferred that this "rumor" helped create the doubt in the minds of the defendant's counsel as to their judgment in accepting this juror, and may have stimulated their zeal to discover the misconduct and fraud which they claim had been perpetrated on the court and on the defendant.

One of the defendant's counsel, Mr. O'Neil, in his affidavit and in his testimony, charged as one element of the original fraud that the clerk of the court had told him that the plaintiff's attorney had suggested to him (the clerk) the name of the talesman to be summoned. The clerk immediately arose in his seat and spiritedly denied that he had said anything of the kind, whereupon Mr. O'Neil retracted it. It suggests, however, the frame of mind the counsel were in when they were so utterly reckless in their statements and charges. The original charges of misconduct also included the misconduct of the counsel, and that he, an officer of the court, perpetrated a fraud on the court by not disclosing all the facts in relation to the juror.

[3] The question of just what the duty of an attorney is under such circumstances is not entirely free from doubt. Beyond any question, if a juror should make some false statement regarding his acquaintance or relationship with the attorney, it would be the attorney's duty immediately to correct it; but if, in the examination of jurors, counsel do not choose to go into certain subjects and make diligent inquiry, I know of no duty devolving upon the opposing attorney to abandon the interest of his own client and disclose to his opponents what they have not exercised diligence to discover. The charge as to the misconduct of counsel seems to have been as much abandoned as the statement concerning the clerk.

It is only just to say that the attitude of the plaintiff's counsel has been fair and commendable throughout this controversy. There has been no zeal to sustain the verdict, but he has stated in his argument that, if there is the slightest evidence of any improper conduct affecting the verdict, he wishes the verdict set aside. But the question is one of greater importance than the wishes of counsel; it is a question whether the integrity of men, and of the acts of men, can be successfully attacked under such circumstances. There must be something more than an adverse verdict upon which to predicate misconduct. Werner v. Interurban Street Railway Co., 99 App. Div. 592, at page 595, 91 N. Y. Supp. 111.

I therefore find that the original charges, made so vehemently by the defendant's counsel, have been reduced to a very small compass. The reckless manner in which some charges were made, as before stated, and which were entirely unsupported by evidence, naturally casts doubt upon them all. I conclude that the juror did not reply falsely to the questions put to him concerning his relations with plaintiff's attorney, nor did he improperly conceal such relations.

[4] The testimony of the jurors, taken after their verdict was rendered (while decision of the motion was reserved), shows that a fair discussion was had of the evidence, and an impartial verdict reached, and that there was no act of this particular juror that showed any partisanship or bias for the plaintiff. When no injustice has been done, and no prejudice has resulted, where a juror sat who might have been objected to, or peremptorily challenged seasonably, the verdict should stand. Hayes v. Thompson, 15 Abb. Prac. (N. S.) 220; Cole v. Van Kueren, 51 How. Prac. 451.

The defendant was not prejudiced in this case by permitting this juror to sit, and the motion must be denied.