EARL STEUBING, Plaintiff, *v.* MARTHA KRISCHER, Defendant.

Supreme Court, Monroe County, May 20, 1938.

*Keenan & Keenan,* for the plaintiff.

*Harris, Beach, Folger, Bacon & Keating,* for the defendant.

LOVE, J. The motion is made upon affidavits of a juror upon the trial, Don G. Kelley, and Charles S. Wilcox, trial counsel for the defendant.

The juror's affidavit states that after rendering a sealed verdict, the jurors, at least some of them, were seated in the court room. Juror Kelley swears that Juror Klem talked with him about the trial in which they were both engaged as jurors; that Klem told him the insurance companies had too much money, were closely held and paid large dividends; that he had recovered a sum of money from an insurance company as a result of an accident occurring when he was bringing his wife home from a hospital; that he had had another claim in which he recovered a sum of money,

arising out of an accident occurring in Pultneyville, N. Y. Considerable more detail is given which we need not repeat here.

Mr. Wilcox's affidavit is to the effect that he asked Mr. Klem whether he or any member of his immediate family had ever been involved in an accident, either of an automobile or other type, resulting in personal injuries to him or any one of his immediate family, to which the reply was in the negative; that relying thereon he consented to Klem's sitting; that his peremptory challenges had not been exhausted and he was deprived of an opportunity to peremptorily challenge the juror.

Plaintiff produces the affidavits of John E. Keenan, of counsel for the plaintiff; Wallace Vokes, a juror; Peter J. Connelly, a lawyer associated with counsel for the plaintiff, and Juror Klem, whom this motion concerns.

Mr. Keenan says he talked with Juror Kelley after the rendition of the verdict; that Kelley told him he thought the plaintiff was not entitled to recover; that the average plaintiff was not so entitled and other matters. It does not seem to me that Mr. Keenan's talk with Kelley touches our point, however prejudiced against plaintiffs Mr. Kelley might be found to be.

Mr. Vokes' affidavit states that there was no mention in his presence as to whether or not there was insurance; nothing said by Klem that would tend to influence or prejudice him or other jurors against the defendant; that Kelley was of the opinion that plaintiff, Steubing, was blameless but wanted to give him a six-cent verdict. Other matters are mentioned, but again I feel that the affidavit is beside our point.

Mr. Connelly merely tells us that he talked to five jurors and that only two were willing to sign affidavits.

Juror Klem swears that he talked with a juror on the panel, but not on the case, whose name was Higgins. He feels Mr. Kelley must have overheard this conversation. He claims it was Higgins who spoke of insurance companies, stating that they always paid dividends. He says he did talk with Higgins about accidents of which he had personal knowledge; that he told him of one at Court street and South avenue (where Kelley says one occurred), but did not tell him there was a recovery or settlement in the amount Kelley claims; that actually not to exceed $800 was recovered; that his wife's parents were the only ones concerned in litigation and recovering in the other accident; that is about all that is pertinent to our question in that affidavit save that Klem swears that Mr. Wilcox did not question him regarding whether or not any members of his immediate family had ever been in an accident. He does say that Mr. Wilcox asked some of the others questions along that line but did not ask him.

It would seem to me that the air would be cleared at the beginning if we are to understand that we are not dealing with a case in which the happenings in the jury room are concerned and not dealing with a case in which effort is made to discredit the verdict by statements made by jurors after rendition of the verdict and discharge in the sense of making that the sole basis for a motion to set aside.

Our question, as I see it, concerns the questioning of the juror before acceptance as such, the concealment or omission to speak, whatever it be, and the subsequent speech and affidavit of the juror as proof only that there was concealment or omission to speak. This was, of course, not done in the jury room.

It is not necessary to find that Klem deliberately concealed the facts by answering " No " to questions put to him personally. He denies that that happened, but says that Mr. Wilcox did ask some of the others questions along the line of whether or not any members of his immediate family had been in an accident. So the question asked of others was heard by him, according to his own affidavit.

It is, of course, through no fault of plaintiff, or his counsel, that Klem did not speak up when he heard such questions to others.

Regardless of which party prevailed and what the size of the verdict the question involved on this state of facts is whether Klem's failure to advise the court and counsel of his experiences, the defendant not having exhausted his peremptory challenges, brings about a condition which calls for a new trial in the interest of justice.

Defendant cites *Knice* v. *Hedges* (119 Misc. 1), where the court wrote: " It was the duty of the juror to have informed counsel of the fact that his father had been injured, although the question may not have been directed to him. His failure to do so was concealment."

Plaintiff's counsel argued that the questioning was done by the court. It is true that in that case a hearing was held by the court after the rendition of the verdict, but in the opinion and order it appears that counsel asked the questions on the trial. It would seem to me to make no difference which did the questioning.

This case was affirmed without opinion (205 App. Div. 871).

The point there involved was a juror's failure to disclose voluntarily that his father had been injured in a railroad accident without the question being directed to him but to others.

To the same effect on the very same facts, *i. e.*, the question being not directly put to the juror involved, is *Baccelli* v. *Booth*

(75 Misc. 260). There, as here, the court does not accuse the juror of any corrupt purpose in maintaining silence nor pass upon the question of his veracity in making his affidavit.

I have already indicated that we are not dealing with the rule that a juror's affidavit will not be received to discredit or impeach his verdict nor as to conduct during the trial or in the jury room or visit to scene of accident.

Such seems to be the cases cited by plaintiff: *People* v. *Sprague* (217 N. Y. 373); *Williams* v. *Montgomery* (60 id. 648); *Haight* v. *City of Elmira* (42 App. Div. 394); *Perry* v. *New York Central R. R. Co.* (169 id. 83) and *Payne* v. *Burke* (236 id. 527, 529).

The case of *Dalrymple* v. *Williams* (63 N. Y. 361) was one in which a juror's affidavit was received to correct an erroneously reported verdict as to one of the defendants. The affidavits were received to correct the error, to establish their true action, not to reverse it.

In *Stone* v. *O' Neil* (93 Misc. 245), where the juror did disclose that he had been a client of counsel but was accepted, we have a situation similar to that in *Dimmick* v. *Colonial Motor Coach Corp.* (136 Misc. 299), where the juror stated he knew counsel. In neither case was the examination pursued by counsel after the juror's answers were made. There was thus no concealment, deliberate or otherwise, and notice was given counsel.

Judge RODENBECK said there: " It is a serious matter to challenge the validity of a verdict upon a ground which attacks the integrity of a man participating in it."

Entirely true, but here no such attack is made upon Mr. Klem. It is quite conceivable that jurors may be timid to volunteer, in some instances, when they hear questions put to others, which were not put to them, but experience shows that it is done much oftener than not, thus in such cases wherein it is done, presenting counsel opportunity to press his examination and exercise a peremptory, if need be, in the interests of his client.

The same is true of *Lane* v. *Vaselius* (137 Misc. 756). *Payne* v. *Burke* (236 App. Div. 527) is not in point.

In *Lane* v. *Vaselius* (137 Misc. 756) the juror said he had been in an automobile collision and that most of the damage was to the car. After the rendition of the verdict it was discovered that his settlement was for $350 property damage and $1,350 for personal injuries. The only falsity that could be claimed was as to the amount paid for personal injuries as indicative of their severity. The juror still maintained that his personal injuries were trivial, the principal damage to his car; that he was not concerned as to

the method in which the insurance company apportioned the damages as long as he received payment for his car; that he insisted his car be replaced and that the amount was no more than sufficient to procure him another car in place of the one damaged. Thus, he still insists upon the truth of his answers originally made and no concealment is established. This case holds as a matter of law that " It is true, as insisted by the defendant, that every suitor is entitled to a fair trial before unprejudiced jurors, and if a juror is permitted to sit on account of a false answer given by him to a material question, it is a fraud upon the court and the parties, and the verdict may well be set aside."

However, the record in that case does not establish the giving of a false answer. Whatever influenced the insurance company in paying as it did does not belie the juror's repeated statement that his injuries were trivial but that he wanted a new car.

In *Slater* v. *United Traction Co.* (172 App. Div. 404) a juror said he had no prejudice against a negligence action. On another case, two days later, in the same court, he said he had such a prejudice. That statement was considered as showing his first one to be false and the verdict was set aside. There it was held that the rule was that the statement of a juror cannot be received to vitiate his verdict but that such rule had no application under the circumstances. So with the instant case.

Plaintiff urges that to grant this motion would result in chaos and multiplicity of trials. With this I cannot concur.

Motion granted. Let an order enter accordingly.