No. 36,691

J. H. KERBY and WARREN H. KERBY, Partners doing business as THE K-M SECURITIES COMPANY, *Appellees*, v. D. H. HIESTERMAN and ARTHUR BOTT, Administrators of the Estate of John Bott, Deceased, *Appellants*.

(178 P. 2d 194)

Opinion filed March 8, 1947.

*J. R. Hyland*, of Washington, argued the cause. and *H. N. Hyland*, of Washington, was with him on the briefs for the appellants.

*W. M. Beall*, of Clay Center, argued the cause, and *F. R. Lobaugh*, of Washington, was with him on the briefs for the appellees.

The opinion of the court was delivered by·

Burch, J.: This appeal is from the retrial of the same case reported in 160 Kan. 566, 164 P. 2d 84. In the first trial the jury's verdict was for the defendant. Our decision on appeal directed a new trial. In the second trial the jury's verdict was for the plaintiffs. The original defendant, John Bott, died after the first and before the second trial occurred and the action was revived against his administrators. They appeal and assert that the trial court erred in overruling their motion for judgment notwithstanding the verdict and in overruling their motion for a new trial because they contend that erroneous instructions were given and that a juror was guilty of misconduct.

A few facts follow: Two juries have found that John Bott was induced by false statements made to him by D. J. Briggs to sign a note for $2,500. The plaintiffs purchased the note from Briggs before its maturity for $2,200. They contend that they are holders of the note in due course. The jury in the present case found that the plaintiffs were not guilty of bad faith in connection with its purchase. Plaintiffs have an unpaid default judgment· against Briggs. Additional facts are recited in our first opinion and will not be set forth herein except such as may be essential for consideration of the controversial questions.

1. The first question, whether the trial court should have sustained the defendants' motion for judgment, must be answered in the negative. Counsel for the defendants contend that our opinion in the former appeal establishes the rule that under the evidence adduced in the trial of this case the defendants are entitled to judgment as a matter of law. The decision is clearly authority to the contrary. Nothing will be gained by wasting print and paper in a prolonged statement of the facts and circumstances from which different juries have reached different conclusions. It is evident that the answer to the factual question is one upon which reasonable minds may differ and consequently the question of the plaintiffs' good or bad faith was for the jury. It cannot be said in the instant case that the evidence presents only a question of law.

2. The next question before us is whether the defendants' motion for a new trial should have been sustained. Error is asserted in the giving of an instruction reading as follows:

"No. 8. You are instructed that to constitute notice of infirmity in a note,

or defect in the title of the person negotiating or transferring the same, the person to whom it is negotiated must have actual knowledge of the infirmity or defect, or knowledge of such facts that his action in purchasing the instrument amounted to bad faith. What is bad faith in a case of this kind, is a question of fact to be determined by the jury, and in this connection you are instructed that neither a suspicion of defect of title, knowledge of circumstances which would excite such suspicion in the mind of a prudent man, or put him on inquiry, nor even gross negligence on the part of the purchaser will affect his rights unless the circumstances are so potent and obvious that to remain passive would amount to bad faith."

Defendants contend that the above instruction places the burden of proving the plaintiffs' bad faith upon the defendants. If such an implication could arise from the instruction, any confusion it might have caused the jury certainly was clarified by the trial court's instruction No. 16, which reads as follows:

"You are further instructed that if you find from the evidence that D. J. Briggs was guilty of fraud or misrepresentation, as charged in this case, in securing the signature of John Bott to the note sued upon, it is then incumbent upon the plaintiffs to establish to your satisfaction, by the degree of proof above explained, and under the evidence received in the case, that they did purchase the note from Briggs before it was due, for value, and in good faith."

Perhaps the wording of the asserted erroneous instruction is confusing and places too much emphasis upon negative circumstances even though its language is lifted largely from the opinion of this court in the case of *Bank v. Hildebrand,* 103 Kan. 705, 177 Pac. 6. The record in the present case, however, does not warrant our passing upon the wording of the instruction. According to the record before us, the defendants apparently made no effort to have the instruction modified or clarified before it was given to the jury. Therefore, the presumption prevails, upon the appeal, that the defendants permitted the trial court to give the instruction with their approval. In such circumstances they are not in a position to demand a new trial because they willingly participated in the possible error until it was too late for the trial court to consider correcting the instruction before it was given to the jury. The instruction as given was not entirely erroneous and consequently the fact that defendants criticized its construction on a motion for new trial does not make it mandatory that a new trial be granted. The question involved was given extended consideration in our opinion by Mr. Justice Parker in *Sams v. Commercial Standard Ins. Co.,* 157 Kan. 278, at 287, 139 P. 2d 859. (See, also, the opinion of

this court by Mr. Chief Justice Harvey in *Steele v. Russell*, ante, p. 271, 176 P. 2d 251.) The opinion written in connection with the former appeal of the instant case comments upon the failure to object to instructions, but calls attention to the fact that the jury in the first trial made damaging findings of fact which could not have been based upon any evidence. Such findings could have been attributable only to the fact that the trial court included in the statement of issues framed by the pleadings allegations of the defendant to the effect that Briggs was a dealer, in oil stocks and doubtful securities. The defense had been abandoned. Nevertheless, the jury answered proper special questions by finding that Briggs was such a dealer and that he did not have a license from the state to sell such securities. Because of such circumstances it was apparent that the plaintiffs did not have a fair trial in the first instance and a new trial was directed for such reason. We do not have a parallel situation in the present appeal and we find no reason which would justify our departure from the precedents developed in the citations hereinbefore given. Perhaps at this point it is prudent, however, to volunteer an admonition to courts and counsel that instructions should not be composed by carving from our opinions certain statements which are applicable or controlling only in the cases in which they appear and inserting such excerpts in general instructions. Instructions should be general in their nature and should not emphasize certain factors and omit others in such manner that the instructions become argumentative in effect.

Another instruction complained of in the present case reads. as follows:

"You are further instructed that when a situation arises in which one of two innocent parties must suffer because of the acts of a third party, then as between said innocent parties the burden must be borne by the one who made it possible for such third party to commit the act from which loss or injury results."

We think the above instruction should not have been given. Where one sues on a note, claiming to be a holder in due course by endorsement from the payee, for value and before maturity, and when the defendant alleges and establishes by evidence that he was induced by fraud to execute the note, the burden is upon the plaintiff to show that he is a holder in due course. (G. S. 1935, 52-509; *United Finance Plan v. Meier*, 147 Kan. 688, 78 P. 2d 904, and cases there cited.) The instruction states a rule sometimes

applied by courts of equity where the facts warrant it, as in *Smith v. Rector*, 135 Kan. 326, 10 P. 2d 1077, and *Wiseman v. Richardson*, 154 Kan. 245, 118 P. 2d 605. These cases were cited by appellees as sustaining the giving of the instruction by the court. We think the rule is not applicable here for it tends to weaken or destroy the statutory rule governing the burden of proof in such instances.

3. Another contention advanced by the defendants in support of their motion for a new trial is that the foreman of the jury was disqualified to act as a juror and was guilty of misconduct. In support of such contention one of the attorneys for the defendants filed an affidavit which sets forth, in substance, that he conducted the *voir dire* examination of the jury; that O. F. Skipton was one of the members of the jury finally selected to try the case; that affiant asked each prospective juror whether either of the attorneys for the plaintiffs was acting as attorney for the prospective juror in any pending case or had been counsel for the juror of recent date; that Juror Skipton was asked such question and replied in the negative; that such answer was false and known by Skipton to be false; that in fact Skipton had recently employed one of the plaintiffs' attorneys to represent him in a case pending in the county court, which case was not terminated until the day of the trial of the present case; that Skipton was elected foreman of the jury and as such influenced, dominated and controlled other jurors, according to affiant's belief. The affidavit also contains statements relative to factual reasons why the foreman could so dominate the jury and further states that the plaintiffs' attorney had acted for the juror without pay; that affiant had not known of the juror's employment of his counsel at the time of the trial and that the negative answer of the juror on the *voir dire* examination precluded further questioning upon the subject. The attorney for the plaintiffs referred to filed a counter affidavit, in which the circumstances of the employment by the juror are detailed. According to such affidavit the juror Skipton asked the attorney to prepare and file a complaint for forcible detention of a small house which rented for $10 per month; the attorney did so; on March 15 the county court entered judgment for restitution; the next day execution was issued; the occupant moved out before the trial of the present case started but the execution was not returned until the day following the opening of trial in the present case. The counter affidavit further states that affiant considered his services as of too small

value to warrant a charge and that affiant informed the juror at the time the complaint was prepared on March 11 that he would not charge the juror anything unless the action was contested; that it was not; that at such time affiant was not aware that Skipton was on the jury panel; that affiant did not see the juror after March 11 until the date of the trial and that on such date the relation of attorney and client did not exist. The counter affidavit continues by disclosing that the affiant did not recall the juror being asked whether either of the attorneys for the plaintiffs was acting as an attorney for the juror; sets forth information obtained from bystanders to the effect that the question asked the prospective jurors was whether the plaintiffs' attorneys were attorneys for the respective jurors "in any pending case" and that the affiant's memory as to the form of the question was the same as that of the bystanders.

We are pleased to note that counsel for defendants in their brief, and the trial court in a memorandum decision, entirely acquit the attorneys for the plaintiffs of any wrong or intentional misconduct in connection with the asserted misconduct of the juror. A juror who gives a false answer to a question asked in connection with a *voir dire* examination is guilty of serious misconduct for which he might be prosecuted for perjury. No record was made in the instant case of the *voir dire* examination and the trial court did not make any finding as to whether the juror actually was asked the question and gave the answer set forth in the affidavit of counsel for the defendants. However, the trial court commented as follows:

"The court does recall that there was general questioning of the jurors as to their relationship with the attorneys in the case, and I do not question but that this juror was so interrogated and gave the negative answer asserted by defendants' counsel. . . ."

The trial court apparently proceeded upon the theory that such misconduct could not impeach the integrity and good faith of the entire jury and that no proper showing had been made which established undue influence on the part of the juror in question. The "memorandum" filed by the trial court in connection with the ruling denying the defendants a new trial technically is not a part of the record but it is germane to the question which confronts us and demonstrates the application of the rule hereafter set forth. Therefore, we quote from the memorandum:

"It would be difficult to conclude that this fair-minded, representative jury panel as selected for this trial, was improperly and unduly influenced to return

the verdict in this case, simply because of overreaching by one juror whose sole interest is. apparently asserted to have been, to favor one of counsel for plaintiffs by returning a verdict in favor of his clients."

From the foregoing it clearly appears that the trial court, in the exercise of its discretion, was convinced that the conduct of the juror was not such in the instant case that .prejudice against the defendants resulted therefrom. The question remains: Should this court reverse the ruling?

The general rule will be found stated in 39 Am. Jur. 87, § 73, as follows:

"The refusal or denial of a motion for a new trial for alleged misconduct on the part of the jury is, as a general rule, a matter within the discretion of the judge presiding at the trial; and unless it appears that this discretion has been abused, that there has been palpable error, or that the judge has refused to review and consider the evidence by which the consideration of the motion should have been guided or controlled, his refusal to grant a new trial will not be disturbed. . . ."

See, also, the following cases: *Mount v. Welsh, et al.,* 118 Ore. 568, 247 Pac. 815; *Lehman v. Hoquiam,* 144 Wash. 181, 257 Pac. 388; *Skeen v. Skeen,* 76 Utah 32, 287 Pac. 320; *Egli v. Hutton, et al.,* 135 Ore. 175, 294 Pac. 347; *Obuchowski v. Penna. R. R. Co.,* 289 Pa. 190, 137 Atl. 186; *Zimmerman v. K. C. Pub. Serv. Co.,* 226 Mo. App. 369, 41 S. W. 2d 579; *Plater v. Kansas City,* 334 Mo. 842, 68 S. W. 2d 800; *Peters v. White,* 169 Okla. 640, 38 P. 2d 523; *Waeckerley v. Colonial Baking Co.,* 228 Mo. App. 1185, 67 S. W. 2d 779; *Schreiber v. Roser,* 258 Ky. 340, 80 S. W. 2d 1; *Johnson v. Johnson* (Tex. Civ. App.) 118 S. W. 2d 338; *Lindemann v. San Joaquin Cotton Oil Co.,* 5 Cal. 2d 480, 55 P. 2d 870; *Burnett v. Weinstein,* 154 Ore. 308, 59 P. 2d 258; *Maffeo v. Holmes,* 47 C. A. 2d 292, 117 P. 2d 948; *George v. City of Los Angeles,* 51 C. A. 2d 311, 124 P. 2d 872; and *Washington Times Co. v. Bonner,* 86 F. 2d 836.

The general rule heretofore expressed in the opinion applies in most cases of possible misconduct on the part of jurors. It applies always in cases wherein there is a conflict of evidence upon the possible misconduct. But there is a well-established exception to the general rule which is frequently followed when it is admitted in substance that a ·juror gave a false answer on *voir dire* examination concerning his qualifications to serve as a juror, with the result that counsel is deprived of any further opportunity to determine whether the juror is fair and impartial. In such circumstances

the question becomes one of law which appellate courts can and should consider. In the present case the plaintiffs' counsel concede that the juror was asked a question as to whether either of the plaintiffs' attorneys was acting as counsel for the juror in any pending case. There seems to have been only a conflict in the evidence as to whether the propounded question included the additional words, "or had been such counsel of recent date." Even though the trial court did not make a specific finding that the incident occurred, nevertheless, the trial court considered the matter upon the assumption that the incident had occurred. The mere fact that the services of counsel might have terminated a few hours or a few days before the question was propounded should not be the basis for decision. Such a holding would be only an ingenious evasion of the substance of the exception to the general rule. Proper evidence was introduced to establish the fact that the juror was asked a question which should have resulted in the juror making a full disclosure of the existing circumstances. Falsity and perfidy should never be permitted in a courtroom. Courts should not condone deceptive evasion of fundamental concepts of justice. In 39 Am. Jur. 65, § 45, the controlling rule in this case is stated as follows:

"It seems generally agreed that when matters which might establish prejudice or work a disqualification of a juror are actually gone into upon the voir dire examination and false answers are given or deception is otherwise practiced, as the result of which a juror, although disqualified in fact, is accepted, the party misled or deceived thereby, upon discovering the fact of the juror's incompetency or disqualification after trial, may assert that fact as ground for and obtain a new trial, upon a proper showing of such facts, even though it has been held, the bias or prejudice is not shown to have caused an unjust verdict; it is sufficient that a party, through no fault of his own, has been deprived of his constitutional statutory guaranty of a trial of his case before a fair and impartial jury."

See, also, 46 C. J. 94, § 51. A clear statement of the reasons for the rule will be found in the opinion by Mr. Chief Justice Benton in the case of *Drury v. Franke*, 247 Ky. 758, 57 S. W. 2d 969, 88 A. L. R. 917, from which the following is quoted:

". . . When the right of challenge is lost or impaired, the statutory conditions and terms for setting up an authorized jury are not met; the right to challenge a given number of jurors without showing cause is one of the most important rights to a litigant; any system for the empaneling of a jury that prevents or embarrasses the full, unrestricted exercise of the right

of challenge must be condemned; a litigant cannot be compelled to make a peremptory challenge until he has been brought face to face in the presence of the court, with each proposed juror, and an opportunity given for such inspection and examination of him as is required for the due administration of justice; the right to reject jurors by peremptory challenge is material in its tendency to give the parties assurance of the fairness of a trial in a valuable and effective way; the terms of the statutes with reference to peremptory challenges are substantial rather than technical; such rules, as aiding to secure an impartial, or avoid a partial, jury are to be fully enforced; the voir dire is of service not only to enable the court to pass upon a juror's qualifications, but also in assisting counsel in their decision as to peremptory challenge; the right of challenge includes the incidental right that the information elicited on the voir dire examination shall be true; the right to challenge implies its fair exercise, and, if a party is misled by erroneous information, the right of rejection is impaired; a verdict is illegal when a peremptory challenge is not exercised by reason of false information; the question is not whether an improperly established tribunal acted fairly, but it is whether a proper tribunal was established; if false information prevents a challenge, the right is so disabled and crippled as to lose its essential value and efficacy, as to amount to its deprivation; the fact that a juror disqualified either on principal cause or to the favor has served on a panel is sufficient ground for setting aside the verdict, without affirmatively showing that that fact accounts for the verdict; it is highly important that the conflicting rights of individuals should be adjudged by jurors as impartial as the lot of humanity will admit; next to securing a fair and impartial trial for parties, it is important that they should feel that they have had such a trial, and anything that tends to impair their belief in this respect must seriously diminish their confidence and that of the public generally in the ability of the state to provide impartial tribunals for dispensing justice between its subjects; the fact that the false information was unintentional, and that there was no bad faith, does not affect the question, as the harm lies in the falsity of the information, regardless of the knowledge of its falsity on the part of the informant; while willful falsehood may intensify the wrong done, it is not essential to constitute the wrong; that the injury is brought about by falsehood, regardless of its dishonesty, and the effect of the information is misleading, rather than a purpose to give misleading information is the gist of the injury; when the fact appears that false information was given, and that it was relied upon, the right to a new trial follows as a matter of law." (p. 797.)

Many additional forceful statements of the rule could be quoted but in respect to brevity we refrain from doing so. Those interested in establishing the right to a new trial in similar circumstances will find strong support in the following cases: *Shulinsky v. Railroad,* 83 N. H. 86, 139 Atl. 189; *Prairie v. Isle La Motte Tel. Co.,* 108 Vt. 391, 187 Atl. 806; *Murray v. Morris* (Tex. Civ. App.) 17 S. W. 2d 110; *Hess' Adm'r v. L. & N. R. Co.,* 249 Ky. 624, 61 S. W. 2d 299;

*Gossett v. Jones* (Tex. Civ. App.), 123 S. W. 2d 724; *Lee v. Baltimore Hotel Co.*, 345 Mo. 458, 136 S. W. 2d 695; *Keener v. Headrick*, 170 Ga. 242, 152 S. E. 254; *Spielter v. North German Lloyd Steamship Co.*, 232 App. Div. 104, 249 N. Y. S. 358; *Loayza v. Brooklyn and Queens Transit Corporation*, 254 App. Div. 577, 2 N. Y. S. 2d 894; *Steubing v. Krischer*, 168 Misc. 20, 6 N. Y. S. 2d 289; *Cleveland Ry Co. v. Myers*, 50 Ohio App. 224, 197 N. E. 803; *Kerr v. B. F. Goodrich Co.* (Ohio App.), 31 N. E. 2d 709; *Shefelker v. First National Bank of Marion*, 212 Wis. 659, 250 N. W. 870; *Alexson v. Pierce County*, 186 Wash. 188, 57 P. 2d 318; *Mathisen v. Norton*, 187 Wash. 240, 60 P. 2d 1; *Saunders v. Williams & Co.*, 155 Ore. 1, 62 P. 2d 260. See, also, *Railway Co. v. Bowman*, 68 Kan. 489, 75 Pac. 482, and *Harshaw v. Kansas City Public Ser. Co.*, 154 Kan. 481, 119 P. 2d 459, in which case it was held that where false answers given on *voir dire* examination resulted in a juror being accepted, the evidence of misconduct of the juror was clearly established.

All of the parties to the action are entitled to at least one fair trial regardless of the number of times the case must be tried. The necessity of a third trial, however, in this case, accounts for some of the dicta in this opinion which otherwise would be omitted therefrom.

The judgment of the district court is reversed with directions to grant the defendants a new trial.

THIELE, J., not participating.