No. 37,236

J. H. KERBY and WARREN H. KERBY, Partners doing business as K-M Securities Company, of Clay Center, *Appellants*, v. D. H. HIESTERMANN and ARTHUR BOTT, Administrators of the Estate of John Bott, Deceased, *Appellees*.

(196 P. 2d 169)

Opinion filed July 10, 1948.

*W. M. Beall,* of Clay Center, argued the cause, and *F. R. Lobaugh,* of Washington, was with him on the brief for the appellants.

*J. R. Hyland,* of Washington, argued the cause, and *H. N. Hyland,* of Washington, was with him on the brief for the appellees.

The opinion of the court was delivered by

HOCH, J.: In an action to recover on a promissory note the defendants prevailed and the plaintiffs appeal. Appellants contend that the trial court erred in giving and in refusing instructions and in overruling their motion to set aside the jury's answers to special questions.

This is the third appeal in this action. In each of two previous appeals, the judgment was reversed and the case remanded for a new trial. (*Kerby v. Bott,* 160 Kan. 566, 164. P. 2d 84; *Kerby v. Hiesterman,* 162 Kan. 490, 178 P. 2d 194.) The defendants prevailed at the first trial and the plaintiffs at the second.

On October 13, 1943, John Bott, since deceased, gave his promissory note to D. J. Briggs for $2,500, due ninety days thereafter with interest at eight percent. Two days later, on October 15, the plaintiffs purchased the note from Briggs at a discount of $300. Action to recover from Briggs and Bott was filed on July 1, 1944. Briggs filed no answer, and at the first trial, on March 12, 1945, judgment was entered against him for the full amount of the note with interest and costs. Efforts to collect from him have been unsuccessful. At all three trials the jury found that the execution of the note had been secured by the fraud and misrepresentation of Briggs, and the

controlling question was whether the plaintiffs were holders in due course. At the instant trial, in addition to a general verdict for the defendants, the jury answered special questions as follows:

"1. Do you find from a preponderance of the evidence that the signature of John Bott was procured upon the note in question in this case by the fraud and misrepresentation alleged and claimed by the defendant? A. Yes.

"2. Do you find from a preponderance of the evidence that the plaintiffs acted in good faith in purchasing the note in question in this case from D. J. Briggs? A. No.

"3. If you answer question No. 2, by stating 'No,' then state in answer to this question the facts which you find show that the plaintiffs did not act in good faith in purchasing such note. A. Lack of investigation; excessive profit on short term note; unsecured and no financial statement; telephone identification unsatisfactory on $2,500.00 note."

Motions of plaintiffs to set aside the answer, for judgment notwithstanding the general verdict and for a new trial, were overruled and this appeal followed.

Appellants first contend that the trial court erroneously instructed the jury with reference to the good faith and lack of notice of infirmity of the instrument required to constitute a purchaser a holder in due course.

A holder in due course is defined by statute, G. S. 1935, 52-502, as follows:

"A holder in due course is a holder who has taken the instrument under the following conditions: (1) That it is complete and regular upon its face; (2) that he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact; (3) that he took it in good faith and for value; (4) that at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

G. S. 1935, 52-506 defines notice of infirmity in a negotiable instrument as follows:

"To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith."

Instruction No. 11 given by the court was as follows:

"The jury is further instructed that in order for it to find that the plaintiffs had notice of the infirmity in the note or the defect in the title of Briggs thereto, claimed by the defendants, if the jury in fact does find herein that there was such infirmity or defect in title, it must be shown by the evidence and circumstances in the case that the plaintiffs, or one of them, had actual knowledge of such infirmity or defect, *or that they had knowledge of such*

*facts that their action in purchasing the same amounted to bad faith. What is bad faith in a case of this kind is a question of fact to be determined by, the jury from all of the evidence* admitted for consideration by it, and the circumstances shown to have existed in connection with the purchase thereof. You are further instructed in this connection that *it is not enough that the knowledge of facts, or the circumstances, shown to exist, were only sufficient to create a suspicion of the existence of some infirmity* in or defect of title to the note being purchased." (Italics supplied.)

Appellants offered an instruction in lieu of No. 11, *supra*, which was identical with it, except that in place of the last sentence thereof, beginning "You are further instructed," they asked substitution of the following:

"You are further instructed that the rights of the plaintiffs are to be determined by the simple test of honesty and good faith and not by speculative issue as to their diligence or negligence. The plaintiffs' rights cannot be defeated without proof of actual notice of the defect in title or bad faith on their part evidenced by facts and circumstances. *Though plaintiffs may have been negligent in taking the note, had a suspicion of such defect of title, and, omitted precautions which a prudent man should have taken, nevertheless unless they acted in bad faith their title to the note in question would prevail.*" (Italics supplied.)

Appellants also requested another instruction as follows:

"You are further instructed that a purchaser of a note is ordinarily under no legal duty to inquire as to the circumstances under which it was executed, *unless circumstances are so potent, cogent and obvious that to remain passive under the circumstances would amount to bad faith.*" (Italics supplied.)

In the appeal from the judgment at the second trial in this case error was asserted in the giving of an instruction which read in part as follows:

"What is bad faith in a case of this kind, is a question of fact to be determined by the jury, and in this connection you are instructed that *neither a suspicion of defect of title, knowledge of circumstances which would excite such suspicion in the mind of a prudent man, or put him on inquiry, nor even gross negligence on the part of the purchaser will affect his rights unless the circumstances are so potent and obvious that to remain passive would amount to bad faith.*" (p. 492.) (Italics supplied.)

While the judgment at the second trial was reversed for a new trial upon other grounds, it was said in the opinion:

"Perhaps the wording of the asserted erroneous instruction is confusing and places too much emphasis upon negative circumstances even though its language is lifted largely from the opinion of this court in the case of *Bank v. Hildebrand,* 103 Kan. 705, 177 Pac. 6. . . . The instruction as given was not entirely erroneous and consequently the fact that defendants criticized its

construction on a motion for new trial does not make it mandatory that a new trial be granted. The question involved was given extended consideration in our opinion by Mr. Justice Parker in *Sams v. Commercial Standard Ins. Co.*, 157 Kan. 278, at 287, 139 P. 2d 859." (p. 492.)

It will be noted that some of the language in the instruction, *supra*, requested by appellants, is substantially the same as the language mildly criticized as placing "too much emphasis upon negative circumstances." The trial court, at the ensuing new trial, with evident purpose of following the suggestion of this court in the matter even though what had been said was, strictly speaking, in the nature of dictum, omitted the language criticized. However, appellants now contend that the instruction, criticized, correctly stated the law and that failure so to instruct constituted prejudicial error. It is true, as pointed out by appellants, that various text writers, reflecting what has been said in many jurisdictions, have approved their requested instruction. They cite from 10 C. J. S. 818-820, § 324, a general statement in support of the propriety of including, in instructions on the question of notice, language like that which they requested. It may be noted, however, that even in that statement it is said:

"Under the general rule *the true test is the presence or absence of bad faith,* and not diligence or negligence or the presence of suspicious circumstances. Negligence in failing to make inquiry in the face of suspicious circumstances, or even gross negligence, is not conclusive and *does not establish bad faith as a matter of law, but it is evidence of bad faith* and material as *bearing on the question of good faith."* (10 C. J. S. 818-820.) (Italics supplied.)

In any event, we need not here determine whether it would have been proper or would have been prejudicial if the requested language had been included in the instruction. The question here is whether the instruction as given was prejudicially insufficient. We do not so consider it. It followed closely the statutory definitions, *supra*. The jury was instructed that in the absence of actual knowledge of infirmity in the instrument the purchasers must have had knowledge of such facts that their action in purchasing it amounted to bad faith; that bad faith was something to be determined from all the evidence and, further, that facts which were only sufficient to create a suspicion of some infirmity or defect of title would not be enough to constitute bad faith. We can see no prejudice to the purchasers in that instruction or in failure to say more.

Appellants' next contention is that the jury's answer to question

3, *supra,* was insufficient to constitute lack of good faith. As to "lack of investigation" we are unable to say that no circumstances were shown which called for further investigation before purchasing the note. The evidence need not be recited in full. Here was a ninety-day note for $2,500, drawing eight percent interest, bought at a discount of $300; plaintiff who bought the note two days after it was executed testified that Briggs, the payee from whom he bought, was a stranger to him and he didn't know much about his financial standing; Bott, the maker of the note, lived only thirty miles from plaintiff's residence at Clay Center; at the time plaintiffs purchased the note they held out fifty dollars from the purchase price, upon direction by Briggs, to send to the banker who had previously called from Clifton, in furthering sale of the note, and who testified that he knew Bott and that he was well worth the note and that "I expect Bott could have borrowed $2,500 at any nearby bank. He should have been able to. It is possible that he could have gotten the money for less than eight percent. Conditions were pretty good in October, 1943." There was ample evidence to support plaintiffs' story of the whole transaction, their standing and their good faith in the matter. However, it is not our function to weigh the evidence, and we are unable to say, upon this record, that there was not sufficient evidence to support the findings and verdict of the jury.

The judgment is affirmed.

THIELE, J., not participating.