No. 81,943

STATE OF KANSAS, *Appellee*, v. WALTER JENKINS, *Appellant.*

(2 P.3d 769)

Opinion filed June 2, 2000.

*Ralph J. DeZago*, of Herington, argued the cause and was on the brief for appellant.

*Terra D. Morehead*, assistant district attorney, argued the cause, and *Nick A. Tomasic*, district attorney, and *Carla J. Stovall*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: Defendant appeals a conviction of second-degree murder, raising several issues. The single issue we will discuss is the defendant's claim that a juror's failure to answer the questions

of her qualifications honestly deprived the defendant of his rights to a fair trial. We have reviewed the other issues raised by the defendant and find no error on those issues.

## FACTS

At approximately 5:15 a.m. on November 6, 1996, the partially nude body of a female was discovered outside an apartment complex in Wyandotte County, Kansas. When the paramedics arrived, they determined the woman had no heart activity. The paramedics began resuscitation efforts, but these were unsuccessful.

Jenkins was charged with premeditated first-degree murder. The jury trial began on February 9, 1998. After the evidence had been submitted, the judge determined that there was no evidence of premeditation and refused to instruct on premeditated first-degree murder. The judge instructed the jury on intentional second-degree murder, unintentional second-degree murder, voluntary manslaughter, and involuntary manslaughter. Jenkins was convicted of intentional second-degree murder.

## JUROR'S KNOWLEDGE

During voir dire of the prospective jurors, the prosecutor and the defense attorney asked numerous questions regarding the prospective jurors' knowledge of the case, the witnesses, the area where the crime was committed, and their experiences with the court system. The prospective jurors' responses were followed up by more specific questions, and the responses served as the basis for qualifying or excluding the prospective jurors. After the defendant's conviction, the defense counsel filed a motion for new trial and was given permission from the judge to obtain an affidavit of a juror, M.M.A.

### The Affidavit

In the affidavit, M.M.A. states that when she was asked if she recognized the name of the victim, she did not recognize the name. However, after the trial had commenced and the jury was shown a picture of the victim, M.M.A. realized that she was familiar with the victim and had met the victim on numerous occasions. M.M.A.

believed that the victim and her associates were heavy drinkers, consumed illegal drugs, "ran the streets," were unemployed, and were "street people."

M.M.A. was also asked in voir dire if she recognized the name of Maurice Hill, a witness for the State. She did not recognize the name. However, when Hill entered the courtroom, M.M.A. recognized him as a man she had seen on numerous occasions. M.M.A. stated that she knew that Hill was generally considered a "sugar daddy," often had younger female companions with him, and was a heavy drinker and possible user of illegal drugs.

When asked during voir dire of the jury panel if she recognized the name of Mickey Whisonant, another State's witness, she did not recognize the name. However, when Whisonant entered the courtroom, M.M.A. recognized him as someone she had often seen on the streets and she was aware that Whisonant had had an eyesight problem since childhood.

M.M.A. also stated that, contrary to her representations to the attorneys, her only son had been murdered in Wyandotte County, Kansas, in 1993. During the investigation and prosecution of her son's murder, M.M.A. had numerous contacts with detectives William K. Smith and Michael Shomin. She found the detectives to be extremely helpful in making sure that her son's murderer was successfully prosecuted. M.M.A. did not disclose her prior contact with the officers during voir dire of the jury panel, and both officers were witnesses in Jenkins' trial.

Finally, M.M.A. also admitted that she was familiar with the area where the victim's body had been found and was aware that area was known for drug activities.

In determining whether to grant or deny Jenkins' request for a new trial, the judge observed that M.M.A. stated in her affidavit that she did not disclose the information because she did not believe it was important. Based on this statement, the judge concluded that M.M.A.'s knowledge and experience did not affect her ability to be a fair and impartial juror. The trial judge found that Jenkins had not met his burden to demonstrate prejudice and denied the motion for new trial.

## Constitutional Guarantees

The Sixth Amendment to the United States Constitution guarantees that in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial by an impartial jury.

Jenkins contends that he is entitled to a new trial because M.M.A.'s failure to honestly answer the juror qualification questions deprived him of the opportunity to challenge the juror for cause or to exercise a preemptory challenge to exclude M.M.A. from the jury. The State contends that Jenkins is not entitled to a new trial because he has failed to show that his rights were substantially prejudiced.

The resolution of the issue depends largely on the standard of review. Jenkins relies on *Kerby v. Hiesterman*, 162 Kan. 490, 178 P.2d 194 (1947), for the following standard:

"When a prospective juror, on *voir dire* examination, gives a false or deceptive answer to a question pertaining to his qualifications with result that counsel is deprived of further opportunity to determine whether the juror is impartial, and the juror is accepted, a party deceived thereby is entitled to a new trial *even if the juror's possible prejudice is not shown to have caused an unjust verdict.*" (Emphasis added.) 162 Kan. 490, Syl. ¶ 3.

The State asserts that the defendant failed to show that his rights were prejudiced by the juror's misconduct. To support its assertion, the State relies on several cases where the reviewing court affirmed the denial of a motion for new trial based on juror misconduct because the defendant failed to demonstrate actual prejudice: See, *e.g., State v. McMullen*, 20 Kan. App. 2d 985, 991-92, 849 P.2d 251, *rev. denied* 257 Kan. 1095 (1995) (showing of actual prejudice required where, in response to a question asking if any of the jurors were friends of or had any problems with any of the potential witnesses or whether any juror had any prejudice towards homosexuals, the juror failed to disclose that she knew the codefendant and that she had a personal disgust for homosexuals); *State v. Turley*, 17 Kan. App. 2d 484, 486-87, 840 P.2d 529, *rev. denied* 252 Kan. 1094 (1992) (showing of substantial prejudice required where, in response to question regarding whether any of the jurors knew the defendant or certain named witnesses, the juror failed to disclose he knew the defendant and one witness); *State v. Zamora*, 263 Kan.

340, 349, 949 P.2d 621 (1997) (showing of abuse of discretion required where, during trial, juror acknowledged that she may have met the defendant once and that juror's adopted daughter may have been the biological cousin to the victim); *State v. Hopkins*, 257 Kan. 723, 724, 896 P.2d 373 (1995) (showing of actual prejudice required where juror failed to voluntarily disclose that his ex-girlfriend had been the victim of a rape); *State v. Collins*, 215 Kan. 789, 790, 528 P.2d 1221 (1974) (showing of abuse of discretion required where, during trial, a juror indicated it slipped her mind that she had a son-in-law in law enforcement); *State v. Mims*, 222 Kan. 335, 338-39, 564 P.2d 531 (1977) (showing of actual prejudice required where, during trial, court was made aware that one of the jurors had formerly worked with a witness for the State).

Jenkins distinguishes the cases relied on by the State from *Kerby* by pointing out that in the State's cases, with the single exception of the *Hopkins* case, the juror misconduct was discovered during the trial when the judge could evaluate the deception or mistake and take remedial action prior to any prejudice to the defendant. In *Hopkins*, Jenkins points out that no questions had been asked to which the juror would have been required to respond.

An appellate court's review of an order denying a motion for a new trial or a motion to recall a jury is limited to whether the trial court abused its discretion. If a defendant's constitutional right has been violated during a trial, a judge's discretion to deny a motion for a new trial or a motion to recall a jury is limited. At this point, there is a greater reason for the judge to articulate the reasons for his or her "discretionary" decision. A trial court abuses its discretion when it denies a motion for a new trial based on juror misconduct if the defendant can show that (1) an act of the jury constituted misconduct and (2) the misconduct substantially prejudiced the defendant's right to a fair trial. *State v. Garza*, 26 Kan. App. 2d 426, Syl. ¶¶ 1, 2, 4, 991 P.2d 905 (1999).

M.M.A. did not discover that she knew the victim until she saw the victim's photograph and was unaware that she knew the State's non-police witnesses until they appeared in court. There is no evidence that M.M.A. intended to deceive the court regarding her

acquaintance with the victim and the State's non-police witnesses until after the jury was selected and sworn.

However, M.M.A. intentionally deceived the trial court in failing to disclose that her son had been the victim of murder in 1993 and that the police witnesses testifying in this case were the same officers who assisted in prosecuting her son's murderer. She also deceived the court in failing to disclose that she was familiar with the area where the crime was committed and knew the area to be a "drug area." The juror failed to disclosure this information to the court even though specific questions were asked during voir dire of the jury panel.

The juror's failure to disclose was intentional and her misconduct substantially prejudiced Jenkins' right to a fair trial. A trial court's exercise of its discretion which results in an error of constitutional magnitude may not be held to be harmless unless an appellate court is willing to declare a belief that the error was harmless beyond a reasonable doubt. *Garza*, 26 Kan. App. 2d 426, Syl. ¶ 3. We are not willing to declare a belief that the error was harmless beyond a reasonable doubt.

Reversed and remanded for a new trial.