(263 P.3d 840)
No. 104,429

ERIC L. BELL, *Appellant*, v. STATE OF KANSAS, *Appellee*.

Opinion filed September 16, 2011.

*Michael P. Whalen*, of Law Office of Michael P. Whalen, of Wichita, for appellant.

*Boyd K. Isherwood*, assistant district attorney, *Nola Tedesco Foulston*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, P.J., HILL and LEBEN, JJ.

LEBEN, J.: A member of the jury that convicted Eric L. Bell of rape had a rape charge pending against him when he was selected to serve on the jury—a fact that the juror intentionally concealed when all jurors were asked whether any had "ever been arrested

before, for anything." Bell filed a habeas-corpus motion under K.S.A. 60-1507 seeking a new trial, but the district court denied it because Bell hadn't shown specifically that this juror acted differently because of the pending rape charge against him.

But when a juror intentionally responds falsely to a question during jury selection and the subject matter of the question is closely connected to that of the trial, Kansas courts have ordered a new trial. And the United States Supreme Court has said that a new trial should be ordered when a juror has intentionally lied about a matter that would have justified exclusion of that juror for cause. The case before us is one of the exceptional ones in which a new trial must be ordered even though there is no showing the dishonest juror actually affected the trial's outcome.

The underlying facts are not disputed. One of the potential jurors, Greg Black, had a rape charge pending against him in another Kansas county when Bell's jury was selected. During jury selection, the district attorney asked all prospective jurors to disclose any arrests: "Has anybody ever been arrested before, for anything? It could be outstanding parking tickets that went to warrant, it could be a DUI, it could be something stupid when you were young, it could be something worse. Anybody been arrested before?" Black didn't respond, although several other jurors did. After the prosecutor had talked with those jurors, he followed up, "[H]ave I talked to everyone who's ever been arrested for anything?" Black again made no response. Since Bell was charged with rape, the prosecutor asked another question specifically seeking information about whether any potential juror knew anyone in their "close circle of family or friends" who had "ever been accused of a crime like this." Again, Black made no response. After Bell's trial, Black was tried and convicted of attempted rape. See *State v. Black*, No. 93,926, 2008 WL 2369789 (Kan. App. 2008) (unpublished opinion).

Bell asked the district court to grant a new trial because Black had served on Bell's jury under these conditions. The parties' arguments before the district court and on appeal center mainly on whether Bell must show actual prejudice from Black having sat on the jury.

Bell relies primarily on a 1947 Kansas Supreme Court case, *Kerby v. Hiesterman*, 162 Kan. 490, 178 P.2d 194 (1947). In it, the court set forth a rule that when a prospective juror answers falsely to a question during jury selection and is accepted as a juror, "a party deceived thereby is entitled to a new trial even if the juror's possible prejudice is not shown to have caused an unjust verdict." 162 Kan. 490, Syl. ¶ 3. Bell seeks to apply this broad ruling in which no prejudice need be shown. If that rule is applied, Bell argues that he is entitled to a new trial because juror Black gave false answers during jury selection.

The State relies upon newer cases in which the Kansas Supreme Court has explicitly stated a prejudice requirement. In both *State v. Mathis*, 281 Kan. 99, Syl. ¶ 2, 130 P.3d 14 (2006), and *State v. Jenkins*, 269 Kan. 334, Syl. ¶ 5, 2 P.3d 769 (2000), cited by the State, the Kansas Supreme Court has said that a new trial is required when a defendant shows both jury misconduct and that the misconduct substantially prejudiced the defendant's right to a fair trial. In denying Bell's motion for new trial, the district court relied upon this rule and the absence of specific evidence that Black's participation on the jury had somehow affected the trial's outcome.

Before we discuss the parties' positions on the legal issue before us, we must first review the standards under which we should consider the district court's ruling, which denied Bell's motion. The Kansas Supreme Court recently addressed the standards an appellate court should use to review a trial court decision denying a motion for a mistrial in *State v. Ward*, 292 Kan. 541, 256 P.3d 801 (2011). The trial court must engage in a two-step analysis. First, the court must determine whether there was a fundamental failure in the trial. Second, if such a failure has occurred, the court must apply the appropriate test to determine whether that failure affected a party's substantial rights under the Kansas harmless-error tests. Where the failure involves a constitutional right, the harmless-error test of *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967), applies, and the error may be declared harmless only if the party benefitting from the error shows beyond a reasonable doubt that the error complained of did not or

will not affect the outcome of the trial. *Ward*, 292 Kan. 541, Syl. ¶¶ 1, 5, 6.

We presume that these standards also apply to our review of a trial court's denial of a motion for new trial. Traditionally, in *Mathis* and *Jenkins*, the Kansas Supreme Court has said that a district court abuses its discretion when it denies a new trial based on juror misconduct if the defendant makes a two-part showing: (1) that juror misconduct occurred and (2) that it substantially prejudiced the defendant's right to a fair trial. *Mathis*, 281 Kan. 99, Syl. ¶ 2; *Jenkins*, 269 Kan. 334, Syl. ¶ 5. Step one of that test is consistent with *Ward*; we are looking to see whether there was a fundamental failure in the trial based on juror misconduct. But the second part of that test is the *Chapman* harmless-error test that applies when a defendant's constitutional rights have been infringed. In assessing that question, *Ward* counsels that the party benefitting from the error must show beyond a reasonable doubt that the error did not affect the trial's outcome. We must then determine which party benefits from the error to which party has the burden to show that the error was harmless. See *Ward*, 292 Kan. 541, Syl. ¶ 9.

The defendant has the right to be tried by an impartial jury, *Jenkins*, 269 Kan. at 337, so any blow to jury impartiality arguably harms the defendant. More significantly, our Supreme Court in *Ward* found "persuasive" the views expressed recently by four United States Supreme Court justices on the denial of review in a case that included a claim of juror misconduct. See *Ward*, 292 Kan. at 567-68 (citing *Gamache v. California*, 562 U.S. 1083, 1084, 131 S. Ct. 591, 592, 178 L. Ed. 2d 514 [2010] [statement of J. Sotomayor, joined by three other justices]). The justices said that under *Chapman*, "the prosecution must carry the burden of showing that a constitutional trial error is harmless beyond a reasonable doubt." 131 S. Ct. at 592. We conclude, then, that once the defendant has shown juror misconduct, the State must show beyond a reasonable doubt that the error did not affect the trial's outcome.

We review the denial of a motion for new trial for abuse of discretion. *Mathis*, 281 Kan. 99, Syl. ¶ 1; *Jenkins*, 269 Kan. 334, Syl. ¶ 2. Judicial discretion is abused when (1) the decision is so arbitrary that no reasonable person would agree with it; (2) the

decision is based on an underlying legal error; or (3) the decision is based on an underlying factual error. *Ward,* 292 Kan. 541, Syl. ¶ 3. Ordinarily our review of the denial of a K.S.A. 60-1507 motion after a nonevidentiary hearing must defer to any factual findings of the district court that are based on substantial evidence in the record of the case. See *Bellamy v. State,* 285 Kan. 346, 354, 172 P.3d 10 (2007). But our Supreme Court has noted that when the district court denies a K.S.A. 60-1507 motion based solely on legal arguments made to it and a review of the case file, the appellate court is in as good a position to review the matter as the trial court was so that the review should be an independent one, without any required deference to the trial court. See *Barr v. State,* 287 Kan. 190, 196, 196 P.3d 357 (2008). This is such a case. There were no significant factual findings in the district court's decision. Rather, its conclusion was based upon its interpretation of *Kerby* and *Jenkins,* and the parties' appellate briefs simply extend their argument about how those cases should be interpreted.

There can be no reasonable doubt here that juror misconduct occurred. There were several questions asked that should have elicited a positive response from juror Black. Moreover, the discussion of the arrests of other jurors went on for several minutes; 11 other jurors admitted past arrests, and the prosecutor followed up with questions to them. Absent some highly speculative scenario in which Black was sitting attentively in the jury box but actually had no idea what was going on, the only logical conclusion is that he intentionally responded falsely when asked to say whether he had an arrest record "for anything" or whether anyone in his family had ever been accused of rape.

We proceed then to the second step of analysis, in which the State must demonstrate beyond a reasonable doubt that the error did not affect the trial's outcome. The parties' arguments to the district court—and in their appellate briefs—mostly addressed whether actual bias by a juror had to be shown. As in many of the past Kansas cases, the parties did not specifically recognize that the State bears the burden to show that any error was harmless. With this in mind, let's review the Kansas cases the parties have discussed in their briefs.

In *Kerby*, a civil case, the Kansas Supreme Court reversed the district court's denial of a new-trial motion when a juror (who later was selected the jury foreman) falsely denied that any of the plaintiffs' attorneys had represented him in any pending or recent case. In fact, the plaintiffs' attorneys had represented him in a case that ended on the same day the jury trial began. Our Supreme Court noted that whether to grant a new trial is generally a discretionary call, 162 Kan. at 496, but reversed the district court and announced a legal rule under which actual prejudice did not need to be shown when a false answer to a question asked during jury selection deprived counsel of the opportunity to ask further questions about the juror's impartiality. 162 Kan. 490, Syl. ¶ 3.

In *Jenkins*, a criminal case, a juror failed to disclose her acquaintance with the victim and two of the State's witnesses, though this was found to have been done unintentionally. But she also failed to disclose her acquaintance with two police officers who were witnesses even though the same officers had assisted in prosecuting her son's murderer. The court found that to have been an intentional deception. Without an explanation, our Supreme Court concluded that this satisfied the traditional prejudice requirement: "The juror's failure to disclose was intentional and her misconduct substantially prejudiced Jenkins' right to a fair trial." 269 Kan. at 339.

In *Mathis*, another criminal case, the defendant argued that a juror had answered falsely when he did not say that he recognized the defendant. That juror was the uncle of the defendant's half-brother. But the juror wasn't directly related to the defendant (the juror's brother was the defendant's half-brother's father, while the defendant and his half-brother had the same mother but different fathers). Nor was there any evidence presented that the juror should have recognized the defendant. Neither the district court nor our Supreme Court found any misconduct, and our Supreme Court distinguished *Jenkins* on two bases. First, it said that in *Jenkins* "[t]he intentionally deceptive nature of [the juror's] misconduct was the centerpiece of the court's discussion." *Mathis*, 281 Kan. at 104. Second, it said that "[t]he court's conclusion that [the juror's] misconduct substantially prejudiced [the defendant's] right

to a fair trial was also based on concealment of the juror's highly positive experience with police and prosecution when her own son was the victim of violent crime." 281 Kan. at 104.

In *Kerby* and *Jenkins*, a juror had falsely answered a question that was specifically related to the case. While a juror knowing one of the parties' attorneys may not always result in that juror's disqualification, the court in *Kerby* appears to have concluded that when a juror intentionally deceives the parties about having only recently been represented by the plaintiffs' counsel, that is sufficiently material that prejudice must be presumed. Similarly, while knowing one or more of the witnesses in a case may not always result in the disqualification of a juror, the court in *Jenkins* appears to have concluded that when a juror intentionally deceives the parties about having had a close acquaintance with two police officers who had helped prosecute the murder of a member of the juror's family, that too is sufficiently material that prejudice must be presumed. There was no evidence noted in either opinion showing actual bias on the part of these jurors. Thus, these cases appear to stand for the proposition—under the test as it was applied in those cases—that when a juror intentionally deceives the court and the parties about an aspect of his or her background that is sufficiently material, prejudice is presumed and need not be separately proven.

When we look beyond Kansas state cases, we find considerations that lend further support to our reading of *Kerby* and *Jenkins*. In *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556, 104 S. Ct. 845, 78 L. Ed. 2d 663 (1984), the United States Supreme Court held that a Kansas federal jury's verdict need not be set aside for a new trial. The case involved a claim that a product defect had caused personal injury, and an attorney asked the jury panel whether any of their family members had ever sustained injuries from an accident. One juror's son had been injured in the explosion of a truck tire, but that juror didn't respond to the question asked of the prospective jurors. The Court held that a new trial was not required unless two criteria were met: "[A] party must first demonstrate that a juror failed to answer honestly a material question on *voir dire*, and then further show that a correct response would

have provided a valid basis for a challenge for cause." 464 U.S. at 556.

Although *McDonough Power Equipment* was a civil case, federal courts have regularly applied its standard when considering whether a new trial should have been granted for juror misconduct in criminal trials. *E.g.*, *United States v. McConnel*, 464 F.3d 1152, 1157 (10th Cir. 2006); *United States v. Solorio*, 337 F.3d 580, 595-96 (6th Cir. 2003). Significantly, five justices wrote in concurring opinions in *McDonough Power Equipment* that juror bias may sometimes be inferred.

Justice Blackmun, joined by Justices Stevens and O'Connor, said that a party seeking a new trial for juror misconduct should be given an opportunity to show actual bias, but that "in exceptional circumstances," the facts may be "such that bias is to be inferred." 464 U.S. at 556-57. Justice Blackmun and the justices who joined his concurring opinion also joined the Court's opinion, so seven justices joined in the two-part test set out there. Justice Brennan, joined by Justice Marshall, concurred only in the judgment, not the specific two-part test the majority adopted. Brennan proposed his own two-part test: a litigant should first have to show that a juror incorrectly responded to a material question during jury selection and then that under the facts of the particular case, the juror was biased against the moving litigant. Brennan specifically said that bias might be shown either through proof of actual bias or "inferred from surrounding facts and circumstances." 464 U.S. at 557-58.

While the Kansas Supreme Court did not explicitly talk about implied bias in *Kerby* or *Jenkins*, its conclusions are consistent both with the holding of *McDonough Power Equipment* and with the concept of implied bias mentioned by five justices. There was dishonesty in each case; it seems clear that the Court viewed both the juror who failed to say that the plaintiffs' attorney had been representing him and the juror who didn't disclose her personal experience with two police officers who would testify had been intentionally deceitful. And the Court viewed the subject matter of these deceits as sufficiently material in each case that bias of the

juror should be inferred—at least given the *Chapman* harmless-error test, which was explicitly applied in *Jenkins*.

Bell's case presents a factual situation more serious than found in either *Kerby* or *Jenkins*. Juror Black was facing a rape charge at the very time that he sat on the jury that would determine whether Bell had committed a rape. Applying *McDonough Power Equipment*, the United States Court of Appeals for the Ninth Circuit has said that juror bias may be inferred when a juror or the juror's family has been personally involved in a situation involving a similar fact pattern to the one at issue in the case to be tried. *Estrada v. Scribner*, 512 F.3d 1227, 1240 (9th Cir. 2008). That was the situation presented by juror Black.

The State argues that we should infer that juror Black would have been biased *against* the State and law-enforcement officers, not against the defendant. And the district court agreed: "The alleged charge against [juror Black] reasonably suggests that [he] would not have had positive experiences with law enforcement and the prosecution." We think that conclusion too narrow given *McDonough Power Equipment* and cases that have applied it. Black failed to answer honestly a material question in jury selection, and had he disclosed the pending rape charge against him, the district court certainly would have sustained a challenge for cause.

We do not know what Black was thinking when he intentionally deceived the parties and the trial court regarding whether he had been arrested. But such an intentional act could well indicate a desire to get onto this jury for some reason. He may have wanted to see how such a case is tried, or hoped to curry favor with the prosecutor in his own case by showing that he was willing to convict a true rapist while arguing that his case (in which he was ultimately convicted only of attempted rape) was much different.

Whatever the case may have been, abstract speculation on whether a person in Black's situation would be favorable to the prosecution or the defense seems beside the point. What we know is that he intentionally deceived the parties about his background in circumstances in which he must have known that revealing it would have kept him off the jury. Given the defendant's right to be tried by an impartial jury, we cannot rely upon speculation to

wipe away facts that meet the test of *McDonough Power Equipment* and seem more serious than those faced in *Kerby* and *Jenkins*.

We also believe the State's argument overlooks the *Chapman* harmless-error standard, which must be applied here. We cannot conclude beyond a reasonable doubt that the presence of juror Black on the jury had no effect on the jury's verdict.

Further, Kansas law provides—quite rightly—that we generally do not allow inquiry into the discussions jurors have. See *State v. Cook*, 281 Kan. 961, Syl. ¶ 6, 135 P.3d 1147 (2006). Thus, it's not an easy thing to prove that a juror's actual bias affected the trial outcome. In this case, Bell need not do so. The juror's failure here to honestly answer a material question during jury selection when an honest answer would have given defense counsel a valid basis to challenge that juror for cause entitles Bell to a new trial. See *Estrada*, 512 F.3d at 1240; *Brooks v. Dretke*, 418 F.3d 430, 432-35 (5th Cir. 2005) (juror bias inferred when juror participated in capital-murder jury while criminal charge was pending against juror); *Burton v. Johnson*, 948 F.2d 1150, 1155-59 (10th Cir. 1991) (juror bias inferred when juror didn't disclose she had been abused by her spouse in murder trial involving abused-spouse defense).

We have concluded that Bell is entitled to a new trial because— unbeknownst to the court, the attorneys, and the defendant—a juror sat in judgment of Bell when that juror simply should not have been allowed to participate. We do not set aside a jury verdict lightly, nor do we lightly require that witnesses in an emotionally difficult case testify a second time. But Bell was sentenced to more than 20 years in prison, and we also recognize that no one can— or should—be sent to prison in the United States unless he or she has received a fair trial in compliance with constitutional requirements. See *State v. Jackson*, 39 Kan. App. 2d 89, 100, 177 P.3d 419 (2008).

The judgment of the district court is reversed, and the case is remanded with directions to order a new trial.