NOT DESIGNATED FOR PUBLICATION

No. 127,026

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

THANG BU,
*Appellee*,

v.

MIDWEST CRANE & RIGGING LLC, et al.,
*Appellants*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; CONSTANCE M. ALVEY, judge. Oral argument held July 8, 2025. Opinion filed May 8, 2026. Affirmed.

*Kurt S. Brack* and *Seth M. Snyder*, of Brown & Ruprecht, PC, of Kansas City, Missouri, for appellants.

*Atif Abdel-Khaliq*, of McIntosh Law Offices, of Kansas City, for appellee.

Before COBLE, P.J., ISHERWOOD and HURST, JJ.

ISHERWOOD, J.: In this personal injury matter, a jury found an employee for Midwest Crane & Rigging, LLC (Midwest Crane) primarily at fault for a motor vehicle collision that resulted in physical injuries to Thang Bu, as well as the total loss of Bu's vehicle. The Appellants bring this appeal to challenge several rulings entered by the district court that they allege compromise the integrity of the jury's verdict. Following a careful review of the record, in conjunction with an analysis of the Appellants' varied claims, we are not persuaded that the district court was misguided in its rulings.

1

On November 8, 2016, Thang Bu was driving northbound on I-635 in Kansas City, Kansas, in the rightmost lane. At the same time, an employee of Midwest Crane was driving a large self-propelled crane behind Bu in the same lane. As Bu approached an on-ramp, he slowed down to allow traffic entering the highway to merge. The driver attempted to brake and sounded his horn but could not avoid rear-ending Bu's vehicle. Kansas Highway Patrol Trooper Christopher Beas responded to the scene. According to Beas' written report, Bu admitted that he slowed significantly on the highway as he neared the on-ramp.

On the first morning of trial, the judge addressed the jury pool and inquired whether any of them would suffer a personal hardship if selected to participate in the trial for approximately four days. Prospective juror number 4 spoke up and expressed, what appears from the record, considerable disdain toward "the lawyer in this courtroom" because apparently, he had a previous interaction a few years earlier at which time the attorney "did something very bad to [the juror's] family." The district court clarified with the juror whether his request for dismissal was because he felt as though it was not possible for him to be fair and impartial, and after receiving an affirmative response, dismissed the juror without further comment. The judge then asked the attorneys to approach the bench at which time counsel for Midwest Crane asserted that the juror's remarks had "just poisoned the whole panel." The district court disagreed and released counsel from the bench to resume the proceeding.

Prior to trial, counsel for Bu filed three motions in limine. The first sought to exclude particular evidence associated directly with the accident including any conclusions drawn by the investigating officer with respect to contributing factors, any hearsay statements uttered at the scene, and any reference to a compromise settlement. Counsel filed a second motion with the intention of excluding any references to insurance

coverage, and a third to prevent the admission of any evidence concerning an accident Bu had several weeks after the one at issue in this case. During the pretrial motions hearing Bu's counsel informed the court that he was compelled to file the motion because Trooper Beas made statements and submitted a report indicating that Bu stopped on the highway and that in doing so he contributed to the accident. Counsel explained that he met with Beas in preparation for trial and learned that the officer's opinion on those matters was not the product of personal observation or particularized accident investigation and reconstruction of any kind but was based on what someone else told him. Following arguments of the parties the district court agreed to allow Trooper Beas to testify from his report but declined to allow the physical copy of his narrative to be admitted into evidence.

Bu's third motion requested exclusion of any evidence pertaining to a rear-end collision that he was involved in approximately three months after the accident occurred in this case and after he was released from all medical treatment associated with his accident involving Midwest Crane. Opposing counsel countered that a causation question was at issue because Bu stated during his deposition that he was unable to precisely attribute his current back pain to one accident over the other. Counsel further argued that the jury should be made aware that Bu is essentially properly characterized as a "serial Plaintiff." The district court concluded that because Bu's current cause of action was limited to those injuries and corresponding medical treatment he received following his accident with Weakly, any evidence regarding the later collision was inadmissible. The court cautioned Bu, however, that to the extent he cracked open the door to the second incident, opposing counsel would be permitted to explore the issue further in front of the jury.

The parties eventually submitted their proposed jury instructions. Counsel for Midwest Crane requested that the district court issue instructions based on PIK Civ. 4th 121.21 (2012) (unlawful stopping on a controlled-access highway), PIK Civ. 4th 121.33

3

(2022) (duty to yield when entering a roadway), and PIK Civ. 4th 121.03 (2010) (duty to maintain lookout). They likewise requested a handcrafted instruction that largely mirrored K.S.A. 8-1561, the provision that addresses when a driver's slow operation of a motor vehicle impedes traffic. The district court concluded that each of the four instructions contemplated different factual scenarios than what was established by the evidence in this case, and declined to include them.

The jury determined that Midwest Crane was 71% at fault and attributed 29% of the fault to Bu. The district court assessed damages based on the respective percentages of fault and ultimately awarded Bu $8,775.60.

The Appellants now bring their case before this court seeking our analysis of various alleged evidentiary and instructional errors. Specifically, they request a determination of whether the district court erred in denying their motion for a mistrial based on comments uttered by a prospective juror, whether Bu's motions in limine were properly granted, and whether the district court clearly erred when it declined to issue four of the Appellants' proposed jury instructions. Additional facts will be included as necessary to thoroughly analyze the issues we have been asked to resolve.

LEGAL ANALYSIS

I. *Did the district court err when it granted each of Bu's motions in limine?*

The Appellants' first claim is that the district court erred in granting two of Bu's motions in limine. First, the Appellants take issue with the district court's exclusion of Trooper Beas' written accident reports and opinion testimony as to what contributed to the collision. Next, the Appellants contend that the district court improperly excluded

evidence of the subsequent collision that Bu was in a few months after the collision at issue here. We will address each point in turn.

*Standard of Review*

On review, a district court's ruling concerning a motion in limine is filtered through a multistep evidentiary analysis. Our first obligation in that framework is to assess the relevance of the challenged evidence, i.e., its probative and material value. The district court's determination that the evidence is probative is reviewed for an abuse of discretion; its conclusion that it is material is subject to de novo review. *Biglow v. Eidenberg*, 308 Kan. 873, 892, 424 P.3d 515 (2018).

If the evidence is relevant, a district court must then determine which evidentiary rule or other legal principles governs its admission. We review its determination de novo. *State v. Knox*, 301 Kan. 671, 688, 347 P.3d 656 (2015). In the third step of the analysis, a district court must then *apply* the rule or principle it decided was applicable in the case. Our standard of review for this step varies depending on the rule or principle that was applied. Some rules and principles grant the district court discretion, while others raise matters of law. *Eidenberg*, 308 Kan. at 892.

As a final matter we may be called upon to conduct an analysis under K.S.A. 60-445, depending on the issue and the arguments advanced by the parties. Under that statute, a district court judge may in his or her discretion "'exclude evidence if [he or she finds that] its probative value is substantially outweighed by the risk that its admission will unfairly and harmfully surprise a party who has not had a reasonable opportunity to anticipate that such evidence will be offered.'" *Eidenberg*, 308 Kan. at 892. We review this issue for an abuse of discretion.

*Trooper Beas' Accident Report*

The Appellants' first contention is that the district court erred when it excluded Trooper Beas' written accident report because it included a statement that Bu allegedly made at the scene of the accident indicating that he slowed down significantly in the third lane. The Appellants take the position that the trooper's written accident report was admissible because it contained a prior inconsistent statement uttered by Bu that the district court should have permitted them to use for impeachment purposes. The record before us contains a transcript from the hearing on Bu's motions and it does not align with the Appellant's claim of error for this issue. At that hearing, Counsel for Bu argued that Trooper Beas' report should be excluded because it included the trooper's opinion that Mr. Bu "stopping could have contributed to this particular accident." Counsel informed the court that when he interviewed the Trooper while investigating the case for trial, he learned that the aforementioned opinion about contributing factors was not a product of the trooper's own investigation or observation. Rather, his report was based on his conversations with both parties at the scene of the accident. Accordingly, consistent with Kansas law, the trooper was prohibited from offering such an opinion under those circumstances because it lacked any foundation and was grounded purely in speculation. The district court ultimately agreed and concluded that while the officer could testify from his report, the report itself would not be admissible.

Thus, the issue briefed by the Appellants does not truly challenge the ruling entered by the district court. Correspondingly, the actual ruling was not briefed and any issue not briefed is properly considered waived and abandoned. *Friedman v. Kansas State Bd. of Healing Arts*, 296 Kan. 636, 643, 294 P.3d 287 (2013) ("Where the appellant fails to brief an issue, that issue is waived or abandoned."). Accordingly, we decline to conduct an analysis of the merits of either the claim briefed by the Appellant or the propriety of the conclusion reached by the district court.

6

*Trooper Beas' Testimony*

In their second contention of error under this issue, the Appellants argue that the district court impermissibly "precluded Trooper Beas from testifying about his opinion as to the cause of the collision."

At the conclusion of the segment of the motions hearing where this issue was addressed, the district court found that while Trooper Beas would be permitted to testify to different statements made to him at the scene of the accident, he would not be permitted to testify and offer an opinion as to the cause of the accident itself. To the extent his bodycam video included such statements they may need to be redacted.

Once again, we are faced with a briefing and record problem. The first line in Appellants' brief under this issue consists of the assertion that "the district court precluded" Trooper Beas from testifying in a particular way. It is not accompanied by a corresponding citation to the record where we can analyze what transpired or what prompted the district court to rule as it did. Nor is there any reference to, or record cite for, what the trooper was relegated to testifying to so that we might have the opportunity to assess how that testimony fell short of the fair and impartial proceedings the Appellants were entitled to. The citation that is included is that point during the hearing on the issue when Appellants' counsel informed the district court what they anticipated the trooper's testimony would consist of.

It is "'the well-established rule that an appellant has the burden to designate a record sufficient to establish the claimed error. Without an adequate record, an appellant's claim of alleged error fails.'" *State v. Vonachen*, 312 Kan. 451, 460-61, 476 P.3d 774 (2020) (quoting *State v. Swafford*, 257 Kan. 1099, 1101, 913 P.2d 196 [1996]); see also Supreme Court Rule 6.02(a)(4), (5) (2025 Kan. S. Ct. R. at 36) (appellant has the burden to furnish a sufficient record to support the claims of error; appellant's claims of error

7

must be supported with specific citations to record on appeal). When a party provides no transcript, we presume the district court's factual findings were correct. *In re Marriage of Dean*, 56 Kan. App. 2d 770, 772-73, 437 P.3d 46 (2018). Nor will we review any action of the trial court requiring us to examine the evidence if no transcript or adequate substitute is provided. 56 Kan. App. 2d at 772-73. Thus, any claim that turns on proceedings or objections from that missing transcript must be resolved against the Appellants, and all reasonable inferences are drawn in favor of the district court's rulings.

We are also compelled to highlight Rule 6.02(a) as it describes the required contents of the Appellant's brief. Under that rule, the Appellant's opening brief must cite to the record where an issue was raised and decided below or otherwise explain why the issue is properly before the appellate court. (2025 Kan. S. Ct. R. at 35). Additionally, the Appellants' Brief "must contain. . . a pinpoint reference to the location in the record on appeal where the issue was raised and ruled on." Rule 6.02(a)(5) (2025 Kan. S. Ct. R. at 35).

Even if our analysis of this issue was not stymied by procedural snarls it could not be resolved favorably to the Appellants. Trooper Beas was not certified as an expert witness so any opinion testimony he offered would be constrained by K.S.A. 60-456. That statute limits a lay witness' opinion testimony "to such opinions or inferences as the judge finds: (1) Are rationally based on the perception of the witness; (2) are helpful to a clearer understanding of the testimony of the witness; and (3) are not based on scientific, technical or other specialized knowledge." K.S.A. 60-456(a). Since the trooper did not personally witness the collision as it occurred, any opinion testimony he planned to offer would run afoul of this provision. Additionally, because he cannot meet the admissibility criteria under subsection (a), he would also be prohibited from testifying to "the ultimate issue or issues to be decided by the trier of the fact" under K.S.A. 60-456(d).

In light of each of the preceding factors the district court's ruling on Bu's second motion in limine must be upheld.

*Bu's Subsequent Collision*

In their final claim of error under this issue the Appellants argue that the district court erred when it granted Bu's third motion in limine and thereby excluded evidence of another collision he was involved in several months after the collision at issue in this case. Bu counters that the subsequent collision is irrelevant and unduly prejudicial because it occurred after he stopped receiving medical treatment for injuries sustained in this case.

"To be relevant in the legal sense, 'evidence must be material and probative.'" *State v. Romey*, 321 Kan. 400, 409, 580 P.3d 1 (2025). "Evidence is material when the fact it supports is disputed or at issue in the case. Evidence is probative if it tends to prove a material fact." *State v. D.W.*, 318 Kan. 575, 579, 545 P.3d 26 (2024). We fail to see the relevance of an accident that occurred several months after the collision at issue here, and after Bu was already released from all medical treatment related to the injuries he sustained in the collision with Midwest Crane's driver.

Even so, Kansas courts distinguish between evidence of character traits, which is limited under K.S.A. 60-447, and evidence demonstrating a pattern of behavior. *State v. Lowrance*, 298 Kan. 274, 290-91, 312 P.3d 328 (2013). The Appellants argue that the subsequent collision should be admissible to demonstrate a pattern of Bu's behavior. However, two occurrences do not constitute a pattern. The information contained within the record concerning this subsequent collision is essentially limited to the mere fact that it occurred. Accordingly, there is not nearly enough known about the incident to draw any reasonable conclusions about what probative value it adds to the inquiry concerning

fault in this case. However, it is clear that a jury could be unduly prejudiced against Bu based on this very limited information.

Based on the record before us we are unable to conclude that in granting Bu's motions in limine the district court committed reversible error.

II. *Did the district court abuse its discretion when it denied the Appellants' request for a mistrial following a prospective juror's negative remarks about one of the attorneys during voir dire?*

The Appellants' next contention of error consists of a claim that the district court's denial of their request for a mistrial during voir dire was an abuse of discretion given that other venire persons "very likely were influenced" by the juror's negative remarks. They further allege the district court's ruling must be reversed because the incident created a "high risk" that their right to a fair and impartial proceeding suffered substantial prejudice. Bu counters that the comments, in isolation, untethered from any details surrounding the apparent dispute between prospective juror number 4 and defense counsel, was insufficient to establish prejudice against the Appellants.

There are no specific statutory grounds for a mistrial in civil cases. *Foster v. Stonebridge Life Ins. Co.*, 50 Kan. App. 2d 1, 22-23, 327 P.3d 1014 (2012). We review the denial of Midwest Crane's request for a mistrial for an abuse of discretion. *State v. Warrior*, 294 Kan. 484, 505, 277 P.3d 1111 (2012). A court abuses its discretion (1) if no reasonable person would take the view it adopted; (2) if it commits a legal error; or (3) if its decision is based on factual findings unsupported by substantial competent evidence in the record. *Wiles v. American Family Life Assurance Co.*, 302 Kan. 66, 74, 350 P.3d 1071 (2015). "'Appellate courts consistently adhere to the rule in both civil and criminal cases that juror misconduct is not a ground for a reversal, a new trial, or a mistrial unless it is shown to have substantially prejudiced a party's rights.'" *King v. Casey's General Stores, Inc.*, 57 Kan. App. 2d 392, 400, 450 P.3d 834 (2019) (quoting *Stover v. Superior*

*Industries Int'l, Inc.*, 29 Kan. App. 2d 235, 243, 29 P.3d 967 [2000]). This threshold principle derives from K.S.A. 60-261, which limits the court's power to reverse only to cases where prejudice to substantial rights appears. *Clements v. Inez Oil Co.*, 87 Kan. 418, 124 P. 423 (1912). The Kansas Supreme Court has clarified that the test for determining whether substantial rights are affected is "whether the error affected the outcome of the trial." *State v. Ward*, 292 Kan. 541, 553, 256 P.3d 801 (2011). The Appellants have not identified a particular factual or legal error that purportedly drove the district court's decision, so we are left to conclude that their dissatisfaction with the district court's ruling arises out of a belief that the conclusion was unreasonable.

Primarily, a civil litigant asserting juror misconduct bears a two-fold burden. They must establish that the misconduct occurred and when that hurdle is cleared, they must demonstrate that the juror's questionable conduct resulted in substantial prejudice to their right to a fair trial. *King*, 57 Kan. App. 2d at 400. In certain, albeit rare, instances, the act being scrutinized is considered so egregious that courts will presume that a party suffered prejudice as a result. *Bell v. State*, 46 Kan. App. 2d 488, 497, 263 P.3d 840 (2011) (explaining that "when a juror intentionally deceives the court and the parties about an aspect of his or her background that is sufficiently material, prejudice is presumed and need not be separately proven"). For example, when a juror provides a false answer to a material question during voir dire, the aggrieved party need not separately prove that the act undermined the fairness of the trial. Rather, the juror's deceitful response is considered inherently prejudicial because that conduct necessarily deprived the parties of the opportunity to question the juror further on that point, seek their dismissal for cause, or use a peremptory strike to have them removed. See *Kerby v. Hiesterman*, 162 Kan. 490, 496-97, 178 P.2d 194 (1947).

Prospective juror number 4 spoke up and asked to be excused because "the lawyer in this courtroom that I don't know very well, but he knows me, and we don't see eye to eye, and fortunately I'm nice enough to sit here." The district court clarified whether the

11

juror was essentially communicating that he could not be fair because of the attorney's involvement. The juror responded, "I got my mind on him. He did something very bad to my family a few years ago, and he knows it. So, I don't want to bring nothing up. . . . Unless you want to talk, and I'll be happy to talk to you."

The juror's "strong feelings" were clearly evident to the district court, so the judge released him from any further service on the case. The court summoned the attorneys to the bench, and counsel for Midwest Crane expressed concern that the prospective juror's remarks "poisoned the whole panel." The judge did not share that opinion and released them back to counsel table so they could resume the proceedings.

In assessing this matter, we note a very brief, well-controlled incident on the first morning of voir dire. The comments themselves were isolated, and somewhat cryptic in that they did not identify which of the two male attorneys in the room was the source of the prospective juror's ire. That may have been readily apparent to those witnessing it as it occurred, but the cold record does not clearly reflect to whom the prospective juror's animosity was directed.

Again, Kansas law requires Midwest Crane to make a showing of substantial prejudice to demonstrate that a mistrial was warranted. *King*, 57 Kan. App. 2d at 400. The test for whether that burden has been sustained is whether Midwest Crane has established that the error "will or did affect the outcome of the trial in light of the entire record." *Ward*, 292 Kan. at 569.

*King* offers a measure of guidance on the issue. There, the plaintiff in a slip-and-fall case claimed that a juror discussed a potential settlement offer during voir dire but did not disclose this information during jury selection. The district court investigated the allegations, found no misconduct, yet still excused the juror from further service out of an abundance of caution. 57 Kan. App. 2d at 394-99.

On appeal, a panel of this court affirmed the district court's decision, holding that King failed to demonstrate juror misconduct or that any alleged misconduct substantially prejudiced his right to a fair trial. The panel reviewed the district court's decision for abuse of discretion, noting that a new trial based on juror misconduct requires proof of both misconduct and substantial prejudice. The court found that the juror's failure to volunteer information about a potential settlement did not constitute misconduct, as jurors are not required to disclose information unless specifically asked. The court also noted that any potential prejudice was mitigated by the juror's removal from the jury before deliberations. The district court's findings were supported by substantial competent evidence, and the appellate court deferred to the district court's credibility assessments and factual determinations. 57 Kan. App. 2d at 402-06.

Like *King*, there was no need for a new trial here. Prospective juror number 4 was released as soon as his dispute with one of the attorneys came to light. No details of their history were revealed to the jury, and there is no specific instance of prejudice apparent in the record. In Midwest Crane's briefing to us they speak in generalities, such as it being "very likely" that the jury was affected or that "there was a high risk" that the juror's comments exposed Midwest Crane to prejudice. We find that these speculative concerns fall well short of what is required to establish the substantial prejudice required to demonstrate that a mistrial was warranted. See *Clark v. Brady*, 126 Kan. 59, 61, 266 P. 740 (1928) ("[P]resumptions of prejudice of the jury from questionable remarks do not maintain in this state. To effect a reversal, prejudice must appear."). The Appellants' suppositions are likewise not sufficient to persuade us that the district court's denial of their requested mistrial was unreasonable and an abuse of the broad discretion it is afforded.

III. *Did the district court clearly err when it declined to issue four of Midwest Crane's proposed jury instructions?*

The final claim of error the Appellants raise concerns their proposed jury instructions. The Appellants requested four particular instructions they believed squared with the particulars of the case including one that addressed lookout duties, and those that covered unlawful stopping, yielding, and slow driving. The district court rejected each one upon finding that they did not align with the factual basis of the case that was established at trial.

Our analysis of jury instruction issues involves a three-step process: (1) determining whether the appellate court can or should review the issue, in other words, whether there is a lack of appellate jurisdiction or a failure to preserve the issue for appeal; (2) considering the merits of the claim to determine whether error occurred below; and (3) assessing whether the error requires reversal, in other words, whether the error can be deemed harmless. *State v. Holley*, 313 Kan. 249, 253, 485 P.3d 614 (2021); see also K.S.A. 22-3414(3) ("No party may assign as error the giving or failure to give an instruction . . . unless the party objects thereto before the jury retires to consider its verdict . . . unless the instruction or the failure to give an instruction is clearly erroneous.").

At the second step, we consider whether the instruction was legally and factually appropriate, using an unlimited standard of review of the entire record. *Holley*, 313 Kan. at 254. In determining whether an instruction was factually appropriate, courts must determine whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction. 313 Kan. at 255.

Whether a party has preserved a jury instruction issue affects the appellate court's reversibility inquiry at the third step. 313 Kan. at 254. When a party fails to object to a jury instruction before the district court, an appellate court reviews the instruction to determine whether it was clearly erroneous. K.S.A. 22-3414(3). To fall in that category an instruction must have legal or factual deficiencies and the reviewing court must be firmly convinced the jury would have reached a different verdict if the erroneous instruction had not been given. The party claiming clear error has the burden to not only establish that the error occurred but also that they suffered prejudice as a result. *State v. Crosby*, 312 Kan. 630, 639, 479 P.3d 167 (2021). While the Appellants requested the instructions at issue and were present in the courtroom for the remainder of trial, there is no indication from the record that they ever formally objected to the district court's refusal to give the instructions. As a result, we review the instructional claims for clear error.

The Appellants first challenge the district court's refusal to issue their proposed instruction for PIK Civ. 4th 121.21. This instruction prohibits "[s]top[ping], stand[ing] or park[ing] vehicles on the right of way of controlled-access highways" except under a series of circumstances that are not applicable here. PIK Civ. 4th 121.21. The district court declined to give the instruction essentially because it was not factually warranted. It noted the absence of any evidence adduced at trial to establish that Bu stopped his vehicle on the highway. To the contrary, the evidence was consistent throughout the trial that Bu reduced his speed to allow another vehicle to enter the highway from an on-ramp.

The Appellants' argument on appeal in pursuit of reversal is largely the same as the one they offered when advocating for the instruction at trial—that the terms "stopped" or "slowing down" make a distinction without a difference. During the instructions conference the Appellants' counsel asserted that Bu "was close to stopping" and "there was a lot of testimony that he was getting very close." In Bu's briefing to our court, the Appellants' counsel contends that Bu's rate of speed was "slow enough that his conduct

was substantially equivalent to a stop." Bu further asserts that there was "no rational reason" for the district court to interpret "stopped" to mean "still with no forward movement."

"Simply pressing a point without pertinent authority, or without showing why it is sound despite a lack of supporting authority, is akin to failing to brief an issue. 'Where the appellant fails to brief an issue, that issue is waived or abandoned.'" *McCain Foods USA, Inc. v. Central Processors, Inc.*, 275 Kan. 1, 15, 61 P.3d 68 (2002); see also Kansas Supreme Court Rule 6.02(a)(5) (2026 Kan. S. Ct. R. at 36) ("An appellant's brief must contain . . . [t]he arguments *and authorities relied on*." [Emphasis added.]). The Appellants' claim is composed nearly entirely of conclusory statements and therefore fails for lack of pertinent authority or an argument showing why their position is sound despite the lack of supporting authority.

Even if we did delve into the merits of the claim, it is unlikely the Appellants would prevail. The Kansas Legislature has defined the term "stop," specifically when used to prohibit traffic from stopping. K.S.A. 8-1472. "'Stop' or 'stopping' when prohibited means *any halting*, even momentarily, of a vehicle, whether occupied or not, except when necessary to avoid conflict with other traffic or in compliance with the directions of a police officer or traffic-control sign or signal." (Emphasis added.) K.S.A. 8-1472. The Kansas Supreme Court addressed this distinction directly holding that "[t]he duties and obligations imposed by statute upon a motorist entering a 'stop' or a 'yield' intersection do not apply in the case of a motorist approaching or entering an intersection after passing a 'slow' sign. . . . It is a warning to reduce speed if traveling at or near the maximum speed limit and to proceed with care." *Daugharthy v. Bennett*, 207 Kan. 728, 732, 486 P.2d 845 (1971). The distinction between slowing and stopping has practical significance in traffic enforcement and civil liability. A "normal stop" was recognized by this court as distinct from merely slowing down. *Every v. Jefferson Ins. Co. of New York*, 4 Kan. App. 2d 715, 718, 610 P.2d 645 (1980) (If the uninsured motorist had a right to

16

make a left turn at the place the left turn was made, then he had a right to stop and wait for traffic to clear before making the turn.). Courts evaluate whether a vehicle came to a complete stop or merely slowed down based on the specific facts and circumstances of each case. *Strimple v. O.K. Warehouse Co.*, 151 Kan. 98, 98 P.2d 169, 172-73 (1940).

None of the relevant terms contained within the statutes or the pattern jury instructions—stop, stand, park, or halt—apply to the facts of this case. No one alleged that Bu stopped on the highway. Bu testified that he did not even employ his brakes, while the driver for Midwest Crane testified that Bu slowed down but did not stop. Even when viewing the facts in the light most favorable to the Appellants, as we are required to do, they simply do not align with the instruction.

The Appellants also requested that the district court issue PIK Civ. 4th 121.33. That instruction provides: "The driver of a vehicle about to enter or cross a roadway from any place other than another roadway shall yield the right of way to all vehicles approaching on the roadway to be entered or crossed." PIK Civ. 4th 121.33 (2012).

From a procedural standpoint, this claim suffers from the same infirmities we outlined above. Their argument in support of the instruction consists of a single, conclusory sentence asserting that the instruction should have been given "because there was substantial evidence admitted at trial that supported Instruction 121.33." However, they do not enlighten us as to what that "substantial evidence" consisted of or where we might be able to locate it in the trial record. They also have not offered any legal authority to buttress their claim or to otherwise demonstrate why the instruction was factually and legally appropriate and why the claim is not easily dismissed as harmless error. Accordingly, we find this issue is properly deemed waived or abandoned. See *McCain Foods USA, Inc.*, 275 Kan. at 15 (issue not briefed is waived or abandoned).

17

We turn next to the district court's denial of the Appellants' requested instruction for PIK Civ. 4th 121.03B. That provision states: "A driver must keep a lookout to the rear only if the movement of (his) (her) vehicle may affect the operation of a vehicle to the rear." PIK Civ. 4th 121.03B (2010). While the Appellants' argument for this claim is a tad less anemic than the two which precede it, they engage in the same practice of relying solely on conclusory assertions and offer no legal authority or analysis to demonstrate why they are entitled to relief. The Appellants, as the party claiming clear error, "ha[ve] the burden to show both error and prejudice." See *State v. Mendez*, 319 Kan. 718, 727-28, 559 P.3d 792 (2024). That obligation has not been met here.

We nevertheless conclude that the district court properly declined to issue the instruction because it was not factually inappropriate. We looked at *Hallett v. Stone*, 216 Kan. 568, 534 P.2d 232 (1975), to conduct a comparison. In that case, a rear-end accident occurred when the plaintiff was required to quickly stop to avoid striking a car in front of her that abruptly turned left. As a result of the sudden stop, the plaintiff's vehicle was rear-ended by defendant's vehicle. The *Hallet* court found that such facts were not of the kind contemplated by the lookout to the rear instruction.

> "The plaintiff did not execute the type of maneuver under which the duty arises. There is absolutely nothing in the evidence to indicate the plaintiff had any opportunity to look to the rear. Neither does the evidence suggest that the exercise of due care required such lookout. The plaintiff was forced to stop because of an illegal left turn by the driver in front of her. She could not turn aside to avoid the collision because of a high curb, and she had her vehicle under such control as to stop it within the range of her vision to avoid striking such vehicle." 216 Kan. at 572.

Similarly, Bu was forced to slow down because of traffic merging onto the highway in front of him. Under those circumstances, he was under no legal obligation to lookout to his rear. Therefore, the instruction was properly excluded from the jury's packet.

The final instruction the Appellants requested was one that they crafted and modeled after K.S.A. 8-1561(a). That provision reads as follows: "No person shall drive a motor vehicle at such a slow speed as to impede the normal and reasonable movement of traffic except when reduced speed is necessary for safe operation or in compliance with law." K.S.A. 8-1561(a). The district court declined to give the requested instruction, finding it similar to PIK Civ. 4th 121.87, an instruction that related to unavoidable accidents but is no longer recommended to be given.

We do not share the district court's view that the unavoidable accident instruction stands as a reasonable and effective analog. The more compelling reason to find that this instruction is inappropriate is, again, the simple facts of the case. The evidence demonstrated that Bu was travelling between 40 and 50 miles per hour on the highway, which satisfied the minimum speed limit of 40 miles per hour on that stretch of highway. There is then conflicting testimony as to whether Bu maintained his speed or slowed down to allow traffic to merge in front of him. Either way, the instruction the Appellants proposed is inapplicable. If Bu maintained his speed, then he did not go below the minimum speed limit. And if he slowed down, it was necessary for the merging cars to safely enter the highway. We find the district court properly declined to issue the proposed instruction; we simply get there by a different avenue. *State v. Phillips*, 312 Kan. 643, 673, 479 P.3d 176 (2021) ("While the district court may have relied on a different rationale in declining to give the instruction, we affirm the district court as right for the wrong reason.").

We are not persuaded that clear error occurred when the district court determined that each of the four instructions requested by the Appellants was incongruous with the facts of the case and, therefore, not appropriate to include within the packet of jury instructions.

19

While the trial in this case was relatively brief and the evidence not extensive, we have no hesitancy in concluding the proceedings were fair and the rulings of the district court were sound. We note this is evidenced to some degree by the jury's conclusion which assessed 71% of the fault to Midwest Crane and attributed the remaining 29% to Bu, resulting in an award of damages to Bu in the amount of $8,775.60. In our view, this is reflective of a justice system that worked as intended and a jury that understood its responsibility and carefully deliberated over the evidence they were provided in an effort to render a just verdict.

Affirmed.